## E. P. STACY & SONS v. MOHER.

1. FOOD—WARRANTY OF FITNESS—DEALERS—IMPLIED WARRANTY—INSPECTION.

There is no implied warranty of fitness or quality in the sale of articles of food, between dealers, where the buyer has an opportunity to inspect the articles before delivery.

2. SAME—WRITTEN CONTRACTS—TRIAL—INSTRUCTIONS—WARRANTY.

Where defendant, a retail grocer, purchased of a wholesale dealer a quantity of eggs for future delivery, under written contract, accepting the stock in the condition it was in when it went into cold storage, in an action for the purchase price, the court properly instructed the jury that if, when the goods went into cold storage, they were fit for food and they afterward deteriorated and became

unfit for food, the loss would be on defendant, there being no claim of fraud or misunderstanding in making the contract.

3. SAME—STATUTES—DEFENSES.

Where the eggs were sound when defendant purchased them, and they decomposed after being placed in cold storage, section 6473, 2 Comp. Laws 1915, making it a misdemeanor to have in one's possession, with intent to sell, any article of food which is diseased, decomposed, etc., is no defense to an action for the purchase price.

4. APPEAL AND ERROR—PREJUDICIAL ERROR—REVIEW.

Where the issue as to defendant's liability was determined by the jury in favor of the plaintiff, and it recovered only the contract price, the admissibility of certain evidence, which appears to be of no consequence, will not be considered, on review.

Error to Chippewa; Fead, J. Submitted October 3, 1917. (Docket No. 3.) Decided March 27, 1918.

Assumpsit by E. P. Stacy & Sons against Jeremiah H. Moher for goods sold and delivered. Judgment for plaintiff. Defendant brings error. Affirmed.

*McDonald & Kaltz,* for appellant.

*Davidson & Hudson,* for appellee.

BIRD, J. Plaintiff is a wholesaler of groceries and produce in the city of Minneapolis. Defendant is a retailer of groceries and produce in the city of Sault Ste. Marie. On the 25th day of May, 1914, the parties entered into a written contract by which defendant purchased of plaintiff 175 cases of selected storage eggs for future delivery. That part of the contract material to this controversy follows:

"J. H. Moher, of Soo, Mich., party of the first part, hereby purchase of E. P. Stacy & Sons, party of the second part, and said E. P. Stacy & Sons hereby sell said J. H. Moher one hundred seventy-five cases selected storage eggs for 24 cents per dozen, said price to include cost and storage and insurance to December 31, 1914. Said goods to be delivered as ordered, pro-

viding said orders shall be given E. P. Stacy & Sons long enough in advance to enable E. P. Stacy & Sons to ship the same.

"It is further provided that all of the eggs purchased are to be ordered, so as to be delivered on or before December 31, 1914, at which time the tender of any balance not ordered out by party of the first part is hereby expressly waived.

"It is also understood between the parties hereto that any eggs not ordered out by the party of the first part at or before the expiration of this contract, shall be charged to said party and immediately paid for; in case said first party fails to take said eggs and pay for same on the expiration of this contract, said second party shall forthwith dispose of said eggs to best advantage for account of said first party. The said first party thereby agrees to reimburse said second party for any such loss as it shall sustain and which shall be charged to account of said first party.

*"It is understood that said J. H. Moher accepts said stock as it is when it goes into cold storage, the buyer having the privilege of inspection at time of purchase should he so desire, but after the signing of the contract, it is understood that these eggs shall be accepted 'at mark' and not candled by E. P. Stacy & Sons when taken out of cold storage, nor shall said E. P. Stacy & Sons sustain any loss that may occur from the buyer candling the same."*

The eggs were afterwards purchased, placed in the Booth Storage warehouse in Minneapolis, and later in the season were shipped by plaintiff to defendant as he needed and ordered them, and they were sold by him to his customers save 24 cases, which, he claims, were spoiled. He returned the 24 cases to plaintiff at Minneapolis and refused to pay for them. It was to recover the contract price of these eggs that plaintiff brought this suit. The jury awarded plaintiff a verdict for the contract price of the eggs.

1. The principal complaint made by defendant is directed at the interpretation which the trial court gave to that part of the contract, which appears in

italics. Based upon that portion of the contract, the jury were instructed that:

"If you find that when the goods went into cold storage they were fit for food purposes, the defendant, Mr. Moher, would not afterwards be entitled to any defense that they became afterward unfit for food. In other words, the condition of the eggs at the time they went into the cold storage would govern the rights and liabilities of the parties in this suit.

"The eggs which were to go into cold storage were, under the contract, selected storage eggs, and as I said, they must have been, in order that the plaintiff be entitled to recover for them, they must have been fit for food purposes at the time they went into cold storage. If they were so fit and they deteriorated afterward that loss would be to the defendant, Mr. Moher, under the contract."

Counsel contends that this instruction was error because "an implied warranty attaches to the articles at the time of the delivery to the buyer—that they are fit then for the purposes contemplated by the contract, namely, for sale by the buyer to the customers." Had this been the ordinary sale and delivery of an article of food counsel's contention would be, quite right, provided plaintiff had had no opportunity to inspect it before delivery (*Copas* v. *Provision Co.*, 73 Mich. 541), but if opportunity had been afforded him to inspect the article before delivery, no implied warranty of fitness or quality would have arisen between plaintiff and defendant because both were dealers. *Baker* v. *Kamantowsky*, 188 Mich. 569.

But this was not the ordinary sale and delivery of an article of food. It was a sale by written contract made by parties who were cognizant of the fact that if the eggs were kept in cold storage until the following winter that some loss was likely to ensue, and the burden of that loss was assumed by defendant in language which is unmistakably plain and unambiguous. There is no claim of fraud or misunderstanding at-

tending the making of the contract. On the other hand, it appears to have been the deliberate act of the parties with a full understanding of the obligations imposed, and we see no valid reason why it should not be enforced as made. We think the interpretation given to it by the trial court was the proper one.

2. Counsel directs our attention to the statute (section 3304, 2 How. Stat. [2d Ed.] ; 2 Comp. Laws 1915, § 6473) which makes it a misdemeanor to have in one's possession with intent to sell any article of food which is diseased, decomposed, etc., and asks whether "it is possible that plaintiff may enforce a payment of an unfit food product in Michigan, the sale, offering for sale or having in his possession for sale here, would be in violation of the law?" If the eggs were decomposed while in defendant's possession the statute would furnish a very good reason why he should not offer them for sale to the consumer, but it would furnish no reason why he should refuse to pay for sound eggs which he contracted to pay for six months previously and to bear the loss of deterioration if any ensued. The eggs were shown to have been sound when purchased and placed in cold storage and defendant had the right of inspection, and if found otherwise than sound, to reject them. Not having done so, nothing is left for him but to bear the loss which he has expressly stipulated in writing he would assume.

3. Several questions are raised as to the admissibility of certain evidence. Inasmuch as plaintiff recovered no more than the contract price which it was entitled to recover if the jury found the eggs were sound when they were placed in cold storage these questions appear to be of no consequence.

The judgment is affirmed.

OSTRANDER, C. J., and MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.