SALZMAN *v.* MALDAVER.

1. EVIDENCE—PAROL EVIDENCE.
    The parol evidence rule, as applied to contracts, is a rule of evidence and also a rule of substantive law.

2. SALES—EXPRESS WARRANTY—PAROL EVIDENCE.
    Parol evidence of prior negotiations and representations cannot be adduced to create an express warranty and thereby vary the terms of a clear and unambiguous written contract relating to the sale of a commodity.

3. SAME—EXPRESS WARRANTY—PAROL EVIDENCE.
    A party who cannot vary the terms of a written contract for the sale of a commodity by parol evidence of representations made prior to its execution cannot assert a claim for an alleged breach of an express warranty arising only by virtue of such representations.

4. PLEADING—DEMURRERS—MOTION TO DISMISS.
    Demurrers have been abolished in this State and questions formerly raised by demurrer may be raised by motion to dismiss (3 Comp. Laws 1929, § 14120).

5. SAME—MOTION TO DISMISS—RIGHT DEPENDENT ON INADMISSIBLE EVIDENCE.

Objection to a bill, declaration or other pleading disclosing a claim of right dependent upon inadmissible evidence may be taken by a motion to dismiss (3 Comp. Laws 1929, § 14120).

6. SAME—EXPRESS WARRANTY—INADMISSIBLE EVIDENCE—UNAMBIGUOUS CONTRACT.

It was not error to dismiss count of declaration alleging breach of express warranty, as to quality or condition of commodity sold plaintiffs, provable only by parol evidence, where contract attached to declaration was clear and unambiguous.

7. SALES—PAROL EVIDENCE—EXPRESS OR IMPLIED WARRANTY—VARYING TERMS OF WRITTEN CONTRACT.

The parol evidence rule bars a plaintiff from recovering on a breach of either an express or implied warranty that may be established only by parol evidence which would vary the terms of a clear and unambiguous written contract for the sale of a commodity.

8. SAME—EXPRESS OR IMPLIED WARRANTY—EVIDENCE.

Where evidence is excluded to establish an express warranty, it is also excluded for the purpose of showing an implied warranty.

9. SAME—INSPECTION OF COMMODITY—IMPLIED WARRANTY OF QUALITY AND FITNESS.

Where written contract for sale of specifically-designated aluminum sheets stated purchasers had examined them and allegations in assumpsit counts indicate plaintiffs had an opportunity to do so, they are precluded from asserting an implied warranty of quality and fitness (2 Comp. Laws 1929, § 9454).

10. SAME—INSPECTION—IMPLIED WARRANTY—DEALERS.

The fact that inspection of specifically-designated aluminum sheets was attended with labor and inconvenience would not, in the absence of fraud, give purchasers thereof, who were dealers in such commodity, the right to assert an implied warranty of quality and fitness (2 Comp. Laws 1929, § 9454).

11. SAME—IMPLIED WARRANTY AS TO FITNESS.

An implied warranty of fitness does not arise unless the contract is executory, the particular article is not designated by the buyer, only his need is known, and that he does not undertake or is not able to determine what will best supply his need but leaves the seller to make the determination and take the risk (2 Comp. Laws 1929, § 9454).

12. SAME—IMPLIED WARRANTY OF FITNESS—FOOD.
Except as the seller is the manufacturer, grower, or vendor of an article intended for consumption as food, there is no implied warranty of fitness on the seller's part where the article is described or defined even though the purpose for which the article is purchased be disclosed to such seller (2 Comp. Laws 1929, § 9454).

13. SAME—IMPLIED WARRANTY OF FITNESS—INSPECTION—PLEADING.
Dismissal of count of declaration based on implied warranty that specifically-designated aluminum sheets sold plaintiffs were suitable for certain uses was proper where written contract stated buyers had examined the material and allegations indicate opportunity had been afforded them to do so (2 Comp. Laws 1929, § 9454).

14. PLEADING—MOTION TO DISMISS—FRAUD—SALES.
Denial of motion to dismiss count of declaration alleging that defendants knew aluminum sheets stored in warehouse were damaged and corroded and for purpose of deceiving plaintiff buyers had placed a good, or undamaged, sheet on top of each bundle was proper since the allegation is assumed to be true and stated a cause of action.

15. GARNISHMENT—DISMISSAL OF ASSUMPSIT COUNTS.
Where assumpsit counts in a declaration were properly dismissed on defendants' motion, the trial court did not err in dismissing writ of garnishment based thereon (3 Comp. Laws 1929, § 14857).

16. COSTS—AFFIRMANCE ON APPEAL BY BOTH PARTIES.
No costs are allowed where both parties appeal and case is affirmed, as neither prevails.

Appeal from Wayne; Neuenfelt (Lila M.), J. Submitted June 6, 1946. (Docket No. 47, Calendar No. 43,406.) Decided September 11, 1946.

Action by Philip Salzman and another, copartners, trading as American Surplus Trading Company, against Fred Maldaver, doing business as Michigan Salvage Company, and others, for damages for breach of warranties and for fraud and deceit. Garnishment against Commonwealth Bank. Declaration dismissed as to assumpsit counts. Gar-

nishment dismissed.  Plaintiffs appeal.  Defendants cross-appeal.  Affirmed.

*Max Kahn,* for plaintiffs.

*William A. Rhodes,* for defendant.

STARR, J.  Plaintiffs are engaged in business in New York city under the name of American Surplus Trading Company.  Defendants are engaged in business in Detroit under the name of Michigan Salvage Company.  On July 25, 1945, these parties entered into a contract which provided in part:

"Party of the first part (defendants) agrees to sell, and party of the second part (plaintiffs) agrees to buy a surplus lot of approximately 790,000 pounds of offal aluminum sheets, various types, gauges, shapes, and sizes, list attached, less approximately 40,000 pounds of 24 S. T. in .025, .032, and .040 gauge which are to be deleted from list, leaving approximately 750,000 pounds in lot, at 11⅝ cents per pound.  The party of the first part does not guarantee the accuracy of the list, and the items and sizes on the list are approximate.  *   *   *

"Payment to be made as follows: $10,000 deposit, receipt of which is hereby acknowledged, total balance of purchase price to be paid within 60 days from this date.

"Material to be shipped in carload lots sight draft bill lading attached.  Each carload is to be paid for at the rate of 11⅝ cents plus 10 per cent. of 11⅝ cents per pound as additional deposit.  The above deposits are to be credited to last shipment or shipments.

"It is understood that if the material is not shipped or paid for by party of second part within 60 days from date of this agreement, the party of the first part is to retain the deposits paid as liquidated damages.  *   *   *

"Material located as follows:

| | | |
|---|---|---|
| Steel Terminal Company | App. | 360,000 lbs. |
| Ford Motor Co. Willow Run plant | " | 225,000 lbs. |
| Ford Motor Co. Rouge plant | " | 125,000 lbs. |
| Ford Motor Co. Lincoln plant | " | 40,000 lbs. |

"It is understood that the party of the first part will pay for the loading of this material in carload lots, f. o. b., their present locations. It is further understood that the party of the first part will pay the storage charges on the material now located at Steel Terminals Company for a period not to exceed 60 days from date of this agreement.

"Material located at Willow Run, Rouge and Lincoln plants are sold f. o. b. their present location. If shipping instructions are not received immediately, from party of second part, this material is to be shipped and stored at Steel Materials Company, at the expense of party of the second part.

"Party of the second part further agrees to pay all expenses of sorting sizes, gauges, or types if they so desire.

"The party of the second part *has examined this material* and understands that there are some odd-shaped pieces in this lot, such as half-moons and triangle shapes."

Attached to the contract were nine pages showing the types, gauges, shapes, sizes, and amounts of aluminum covered by the contract. Trouble arose between the parties over the quality and condition of the aluminum, and in December, 1945, plaintiffs began the present suit for damages. They also caused writ of garnishment to be issued against several banks, including the Commonwealth Bank of Detroit. As the principal questions before the trial court and on this appeal relate to the allegations in plaintiffs' declaration, it is necessary to discuss the declaration in some detail. In the first count plaintiffs alleged the execution of the contract in ques-

tion; that they had deposited with defendants the sum of $10,000; and that prior to the execution of the contract defendants had informed them that they had purchased the aluminum from the Ford Motor Company, which was disposing of it as surplus material. They further alleged:

"Plaintiffs informed defendants that plaintiffs would be interested in purchasing said aluminum sheets as a dealer, provided the same were suitable for resale for manufacture into aluminum articles for consumption by the public, such as kitchenware and utensils, ash trays, lamps, clocks, jewelry, and other articles manufactured in all or in part of aluminum, and in which the aluminum showed in its natural state. Defendants represented to plaintiffs that said aluminum sheets were suitable and fit for the manufacture of such articles and kindred articles; that said sheets were new but comprised a lot of miscellaneous, large aluminum sheets, varying as to thickness, width and length; that the sizes were not standard sizes and to some extent parts of sheets had been stamped out for other uses, leaving only a portion, but a substantial portion, of a sheet remaining; that all of said sheets were bundled, wrapped in waterproof paper and banded and fully protected against the weather and that each bundle contained sheets generally uniform as to thickness, length and width, that said aluminum sheets had been under roof in dry storage, had not been exposed to moisture or sweating, had not been exposed to the air or any other substance that would cause corrosion; that said sheets were not corroded; that the sheets were protected from each other against air, moisture and scratching by paper sheets and that all of said aluminum was suitable for the manufacture of kitchenware and utensils, ash trays and other articles for public consumption, such as lamps, clocks, ornaments, jewelry, picture frames and, generally, all articles manufactured in whole or in part of

aluminum in which aluminum appeared in its natural state."

Plaintiffs alleged that in the course of their negotiations prior to the execution of the contract, defendants took them to the warehouse in Detroit, where a part of the aluminum was stored, for the purpose of showing them that the bundles of aluminum sheets had been securely and properly wrapped against exposure to the weather: They alleged that the bundles were piled in the warehouse to a height of 10 to 15 feet and were wrapped with waterproof paper and banded with metal straps; that they were unable to make any proper inspection of the bundled sheets and relied entirely on defendants' representations that the bundles contained aluminum sheets which were fit and suitable for manufacturing purposes. They alleged that after the contract was executed, they resold a part of the aluminum sheets to the Aircraft Metal Company of New York and instructed defendants to ship the same; that when the shipment was received, plaintiffs were notified by the Aircraft Company that the sheets were corroded and wholly unfit for commercial use; that they immediately inspected the shipment and found that the sheets were scratched and corroded and could not be used for the manufacture of aluminum products. They alleged that after their examination of the shipment to the Aircraft Company, they notified defendants to make no further shipments; that thereafter they inspected the bundles of aluminum sheets stored in the warehouse in Detroit and found that all of the sheets, except the top one in each bundle, were corroded and unfit for use. They further alleged that they notified defendants that they would not accept further shipments; that they demanded repayment of their deposit of $10,000 and

notified defendants that they would hold them liable
for damages for breach of contract.

In the second count of their declaration plaintiffs
realleged their claims relative to the aluminum
sheets' being corroded and unfit for commercial use;
that they had had no opportunity to inspect the
sheets in the bundles stored in the Detroit ware-
house; and that they had relied entirely on defend-
ants' skill as dealers in aluminum and on their
representations that the aluminum was fit for com-
mercial use. They alleged that there was an implied
warranty on the part of defendants that the alumi-
num was fit for use in the manufacture of kitchen-
ware and other articles in which the aluminum
would appear in its natural state; that defendants
had breached this implied warranty by delivering
corroded and damaged aluminum sheets which were
unfit for this use.

In the third count in trespass on the case, plain-
tiffs alleged deceit and fraud; they claimed that de-
fendants knew the aluminum sheets were corroded
and damaged and deceived and defrauded them by
causing the sheets to be packed in bundles with an
undamaged sheet on top to cover the corroded and
damaged sheets beneath.

Defendants moved to dismiss the declaration on
the following grounds:

"1. That the declaration in said cause, while
based on a written contract between the parties, at-
tempts by its allegations to change the terms of the
written instrument by seeking damages for an al-
leged expressed warranty which is not a part of the
contract of the parties.

"2. That the declaration, although based on a
written instrument, asserts a claim on an implied
warranty notwithstanding the fact that the written

contract of the parties is one based on the sale and purchase of specific goods examined by the plaintiff.

"3. That the declaration attempts to change the terms of the written contract of the parties by charging the defendants with purported warranties in violation of the parol evidence rule.

"4. That from the face of the pleadings, the undertaking that the plaintiffs allege that the defendants breached is outside of and not a part of the written agreement between the parties."

Defendants also moved to dismiss the writ of garnishment which plaintiffs had caused to be issued against the Commonwealth Bank as garnishee defendant. No testimony was taken, and the matter was heard on arguments and briefs. The trial court entered an order dismissing the assumpsit counts of the declaration but denying defendants' motion to dismiss the third, or trespass, count. The order also dismissed the writ of garnishment. Plaintiffs' motion for a rehearing was denied, and they appeal. Defendants cross-appeal from that part of the order which denied their motion to dismiss the trespass count. The principal questions before us are whether or not the trial court erred in dismissing the assumpsit counts of the declaration and in refusing to dismiss the trespass count.

It should be kept in mind that these parties were dealers in aluminum and not manufacturers of aluminum products. Defendants had purchased the aluminum in question from the Ford Company and had sold it to plaintiffs, who proposed to resell it to manufacturers of aluminum products. It should also be kept in mind that the written contract did not contain an express warranty as to the quality or condition of the aluminum, nor did it indicate for what purpose the aluminum was to be used. It was

expressly stated in the contract that "the party of the second part (plaintiffs) has examined this material."

The declaration was based upon the written contract, copy of which was attached. However, in the first count plaintiffs alleged a breach of an express warranty, which they claim arose by reason of certain representations made by defendants prior to the execution of the contract. Defendants' motion to dismiss, as it relates to the first count, was based upon the theory that the contract embodied the entire understanding and agreement of the parties and that plaintiffs could not declare upon an express warranty arising by virtue of alleged representations made prior to the execution of the contract. It is clear that such representations could be established only by parol evidence and that this evidence would vary the terms of the written contract, which was complete and unambiguous and did not contain an express warranty. The parol evidence rule is a rule of evidence and also a rule of substantive law. In 32 C. J. S. p. 787, § 851, it is stated:

"According to the modern and better view, the parol evidence rule, as applied to contracts, is a rule, not of evidence or of evidence merely, but of substantive law."

See, also, Thayer, A Preliminary Treatise on Evidence at the Common Law, pp. 390–397; 20 Am. Jur. p. 963, § 1100.

It is well established that where a written contract is clear and unambiguous, parol evidence of prior negotiations and representations cannot be adduced to create an express warranty and thereby vary the terms of the contract. *Murphy* v. *Gifford*, 228 Mich. 287; *Bayer* v. *Winton Motor Car Co.*, 194 Mich. 222; *Witteman Co.* v. *Beck Malting & Brewing Co.*, 183

Mich. 227; *Potter* v. *Shields,* 174 Mich. 121; *D. M. Osborne & Co.* v. *Wigent,* 127 Mich. 624. Therefore, as plaintiffs could not vary the terms of the written contract by extrinsic parol evidence of representations made prior to its execution, we conclude that they could not assert a claim for an alleged breach of an express warranty arising only by virtue of such representations. Demurrers have been abolished in this State, and questions formerly raised by demurrer may now be raised by motion to dismiss. 3 Comp. Laws 1929, § 14120 (Stat. Ann. § 27.814); Court Rule No. 17, § 7 (1945). Defendants were entitled to invoke the parol evidence rule on their motion to dismiss. In *Leckie* v. *Bray,* 91 W. Va. 456, 461 (113 S. E. 746), it is stated:

"Ordinarily, it (parol evidence rule) is invoked on the trial, by an objection to the admission of the evidence. But, on principle, it seems to be clear that the objection may be taken by demurrer to the bill, declaration or other pleading disclosing a claim of right dependent upon inadmissible evidence."

See, also, *Porter* v. *Baldwin,* 139 App. Div. 278 (123 N. Y. Supp. 1043).

In the present case the trial court did not err in dismissing the first count of the declaration.

In the second count of the declaration plaintiffs alleged the breach of an implied warranty of quality and fitness. They claim that this implied warranty arose by reason of the fact that, prior to the execution of the written contract, they had informed defendants of the purpose for which the aluminum sheets were to be used, that is, to manufacture kitchen utensils and other articles in which aluminum would appear in its natural state. The written contract did not indicate for what purpose the aluminum was to be used, and plaintiffs base their

claim of an implied warranty only upon oral representations made prior to its execution. Here, again, the parol evidence rule, as a rule of law, bars plaintiffs from asserting an implied warranty which could be established only by parol evidence which would vary the terms of the written contract. The written contract was clear and unambiguous, and parol evidence could not be adduced to add to or change the contract so as to create either an express or an implied warranty. Where evidence is excluded to establish an express warranty, it is also excluded for the purpose of showing an implied warranty. *Detroit Shipbuilding Co.* v. *Comstock,* 144 Mich. 516; *McCray Refrigerator & Cold Storage Co.* v. *Woods & Zent,* 99 Mich. 269 (41 Am. St. Rep. 599). Section 15 of the uniform sales act (2 Comp. Laws 1929, § 9454 [Stat. Ann. § 19.255]) provides in part:

"(2) Where the goods are bought by description from a seller who deals in goods of that description, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be of merchantable quality.

"(3) If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed."

In the present case the transaction was not a sale of goods by description, but was a sale of specifically-designated aluminum sheets. Having expressly stated in the contract that they had examined these sheets, plaintiffs may not now assert an implied warranty of quality and fitness. The allegations in the assumpsit counts of plaintiffs' declaration clearly indicated that they were afforded an opportunity to inspect the bundles of aluminum sheets stored in the Detroit warehouse, but that they did not avail themselves of this opportunity. The fact that the bundles were heavy and piled high, and

that the inspection would have been attended with labor and inconvenience would not give them the right to assert an implied warranty of quality and fitness. In the case of *E. P. Stacy & Sons* v. *Moher,* 200 Mich. 81, which involved the question of an implied warranty, we stated (p. 84):

"If opportunity had been afforded him (plaintiff) to inspect the article before delivery, no implied warranty of fitness or quality would have arisen between plaintiff and defendant because both were dealers. *Baker* v. *Kamantowsky,* 188 Mich. 569."

In *Remy, Schmidt & Pleissner* v. *Healy,* 161 Mich. 266, 268 (29 L. R. A. [N. S.] 139, 21 Ann. Cas. 74), we said:

"It is a settled rule that one who buys an article which is present and subject to his inspection cannot afterwards assert an implied warranty of fitness, quality, or condition, in the absence of fraud, except possibly where the seller is the manufacturer or grower, or the vendor of articles intended for consumption as food; *'caveat emptor* is the invariable maxim.' Mr. Mechem states that the rule of the common law is practically without exception that the buyer purchases at his own risk. 2 Mechem on Sales, § 1311. * * *

" 'The rule is not altered by the fact that the examination or inspection will consume time or is attended with labor and inconvenience. No exception to it can be admitted * * * except "where the examination at the time of the sale is, morally speaking, impracticable. * * * The mere fact of the inspection being attended with inconvenience or labor is not equivalent to its impracticability. If the purchaser desire to avoid it, and yet obtain the protection it would afford him, he must do so by exacting from the vendor an express warranty of quality.' ' " (2 Mechem on Sales, § 1312, p. 1129).

In *F. M. Sibley Lumber Co.* v. *Schultz,* 297 Mich. 206, 216, 217, we quoted with approval the follow-

ing statement from *Dunn Road Machinery Co.* v. *Charlevoix Abstract & Engineering Co.*, 247 Mich. 398 (64 A. L. R. 947):

"It is well stated by Mr. Mechem, as follows:

" 'The implied warranty of fitness is not to be extended to cases which lack the necessary conditions upon which it depends. The essence of the rule is, that the contract is executory; that the particular article is not designated by the buyer; that only his need is known; that he does not undertake or is not able to determine what will best supply his need, and therefore necessarily leaves the seller to make the determination and take the risk; and if these elements are wanting, the rule does not apply.

" 'If, therefore, a known, described and defined article is agreed upon, and that known, described or defined article is furnished, there is no implied warranty of fitness even though the seller is the manufacturer and the buyer disclosed to him the purpose for which the article was purchased.' 2 Mechem, Sales, § 1349."

See, also, *Achenbach* v. *Mears*, 272 Mich. 74; *Amos* v. *Walter N. Kelley Co.*, 240 Mich. 257; 1 Williston on Sales (2d Ed.) p. 447, § 231.

In summary, there was no implied warranty of which plaintiffs could assert a breach. The trial court did not err in dismissing the second count of the declaration.

In the third, or trespass, count plaintiffs alleged deceit and fraud on the part of defendants. They alleged that defendants knew the aluminum sheets stored in the warehouse were damaged and corroded and that, for the purpose of deceiving and defrauding plaintiffs, they had placed a good, or undamaged, sheet on the top of each bundle of corroded and damaged sheets. Assuming the truth of the material and well-pleaded facts in the trespass count of the declaration, we conclude that it stated a cause

of action. *Doyle* v. *Kammeraad,* 310 Mich. 233, 235. The trial court did not err in denying defendants' motion to dismiss the third count.

As the assumpsit counts of the declaration, which were based upon the contract, were properly dismissed, the trial court did not err in dismissing the writ of garnishment against the Commonwealth Bank. 3 Comp. Laws 1929, § 14857 (Stat. Ann. § 27.1855). The order of the trial court is affirmed. As neither party prevails on this appeal, no costs are allowed.

Butzel, C. J., and Carr, Bushnell, Sharpe, Boyles, Reid, and North, JJ., concurred.