**MARYLAND CAS. CO. v. INDEPEND-
ENT METAL PRODUCTS CO.**

No. 14528.

United States Court of Appeals
Eighth Circuit.

April 21, 1953.

Edson Smith, Omaha, Neb. (Herbert E. Story, Omaha, Neb., on the brief), for appellant.

Louis E. Lipp, Omaha, Neb. (White, Lipp & Simon, Omaha, Neb., on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

GARDNER, Chief Judge.

This was an action brought by the Maryland Casualty Company to recover $7,048.81 which it had expended in defense of an action brought against the Fruehauf Trailer Company and in satisfaction of a certain judgment rendered against that company in an action brought against the Fruehauf Trailer Company on account of an alleged breach of warranty of fitness of a gasoline trailer tank which had been purchased from the Fruehauf Trailer Company by the Gilmore, Gardner & Kirk Oil Company. The basis for the liability of the Maryland Casualty Company was that it had issued a liability insurance policy agreeing to indemnify and hold harmless the said Fruehauf Trailer Company against suit and liability and was obligated to defend against such a suit as the one above mentioned and to pay any judgment obtained against the Fruehauf Trailer Company in such action. The policy also contained provision that in the event of any payment under the policy the Casualty Company should become subrogated to all the insured's rights of recovery therefor.

It was alleged that the Fruehauf Trailer Company had purchased from the defendant Independent Metal Products Company, or its predecessor in interest, a 4000 gallon metal tank manufactured by it for use in the transportation of gasoline and installed said tank upon a trailer chassis; that thereafter the Fruehauf Trailer Company sold and delivered the tank to the Gilmore, Gardner & Kirk Oil Company; that when the tank was delivered to the Fruehauf Trailer Company there remained a small piece of welding rod approximately 2 inches in length by ⅛ of an inch in diameter, in the front compartment of the tank, which had lodged in the valve through which the front compartment discharged and prevented the complete closing of the valve, and on December 10, 1942, this resulted in an excessive delivery of gasoline by the Oil Company to a tank beneath the floor of a garage of the Oklahoma Transportation Company in Oklahoma City, Oklahoma, and an overflow of gasoline which caught fire, resulting in substantial damages; that in an action for damages resulting from the said fire a judgment was rendered against the Fruehauf Trailer Company which, together with the expense of litigation, was ultimately paid by the Maryland Casualty Company. It is alleged that the Fruehauf Trailer Company notified the Independent Metal Products Company of the filing of said action and tendered to it the defense and demanded that it hold it harmless from any loss arising out of said action; that the Independent Metal Products Company failed and refused to defend the action. It is then alleged that the Independent Metal Products Company is liable to plaintiff for the amount expended by it for the reasons: (1) that the loss and damage was the proximate result of the negligence of defendant Independent Metal Products Company in causing and permitting a piece of welding rod to be and remain in the front compartment of said tank and in failing properly to inspect said tank; (2) that Fruehauf Trailer Company, prior to the delivery of the tank to it, made known that the tank was to be used for the purpose of transporting and delivering gasoline and Fruehauf Trailer Company relied on the skill and judgment of the Independent Metal Products Company to so inspect and remove any foreign matter from said tank so that said tank would be reasonably fit

for use in transporting and delivering gasoline.

Appellee answered, denying negligence and denying that there was an implied warranty of fitness; pleaded an express warranty which would not make it liable for the defect in the metal tank, alleged that the tank was constructed under the directions, plans and specifications of the Fruehauf Trailer Company, and denied that that company had relied upon the skill of the Metal Products Company or on its inspection, and alleged that the Fruehauf Trailer Company itself inspected the tank before accepting delivery thereof. The answer made specific denial of all allegations seeking to charge it with liability.

We shall now refer to the parties as they were designated in the trial court and refer to the Fruehauf Trailer Company as Fruehauf.

The action was tried to the court without a jury and resulted in findings in favor of the defendant on all the issues. D.C., 99 F.Supp. 862. Based on these findings the court entered judgment of dismissal on the merits and the Maryland Casualty Company prosecutes this appeal on substantially the following grounds: (1) the court erred in finding that the evidence was not sufficient to prove that the piece of welding rod was left in the tank by the defendant or was in the tank at the time it was delivered to Fruehauf; (2) the court erred in holding that although the presence of the welding rod could have been discovered by a more detailed inspection, defendant was not negligent in failing to make such inspection and that it was not negligent in failing to remove the piece of welding rod from the tank if in fact it was in the tank at or prior to the time of the delivery to Fruehauf; (3) the court erred in failing to find that Fruehauf justifiably relied upon defendant's care in cleaning and inspecting the tank; (4) the court erred in concluding that the express warranty given by defendant negatived an implied warranty of fitness for use.

▆ Plaintiff, by the payment of the judgment against Fruehauf, confessedly became subrogated to such rights as that company had against defendant. The basis for the charge of liability is the fact that there was found in this tank a short piece of welding rod which prevented a valve from properly closing, thus permitting the escape of gasoline. The burden of proof was, of course, upon plaintiff and the court found as a fact that it had not sustained the burden of proving that the piece of welding rod was in the tank at and prior to the time of its delivery to Fruehauf. It is pointed out that for a considerable period of time after its delivery and acceptance by Fruehauf it was out of the possession of defendant and that the finding of the piece of welding rod in the tank at a later date gave rise to no presumption that it had been there at a prior time. This finding of the court is presumptively correct and will not be disturbed unless clearly erroneous and it is not the function of this court to retry and redetermine the facts involved. Pendergrass v. New York Life Ins. Co., 8 Cir., 181 F.2d 136; Graver Tank & Mfg. Co. v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672.

▆ In considering the sufficiency of the evidence to sustain the court's findings we must view the evidence in a light most favorable to defendant. So considered, we think the court was warranted in finding from the evidence that plaintiff failed to prove that the interior of this tank had not been thoroughly cleaned before it was accepted by Fruehauf. The nature of the cleanup of the tank interior involved sweeping, vacuuming and cleaning out thoroughly and painting the interior seams. There was direct testimony that the tank was free of foreign matter when accepted by Fruehauf but plaintiff relies upon circumstantial evidence to overcome this direct proof. Thus it is argued that this piece of rod was in the tank when the accident in Oklahoma happened. This was some thirty-six days after it was cleaned by defendant and inspected and accepted by Fruehauf and in the absence of any explanation with reference to what may have been done to the tank in this interim there did not arise a presumption

that the obstruction was in the tank at a prior date. Liverpool & London & Globe Ins. Co. v. Nebraska Storage Warehouses, 8 Cir., 96 F.2d 30; W. F. Corbin & Co. v. U. S., 6 Cir., 181 F. 296; 20 Am.Jur. p. 209.

There was also the circumstance that the defendant in fact used the type of welding rod found in the tank. As to this it appears that it was a standard type of rod that is universally used in all shops and factories carrying on welding activities and was identically the same type and size as Fruehauf used in its factory which adjoined defendant's plant, as well as in its sales and service branches in Omaha and elsewhere. In this connection it should be observed that Fruehauf was a manufacturer of similar tanks on a very large scale. The further circumstance is urged that in spite of the most careful cleaning, occasionally a piece of rod may lodge in the interior braces of the tank. The trial court might, we think, reasonably have believed that the circumstance that a bit of welding debris may occasionally escape the task of cleaning does not establish that the bit of rod which caused the fire was the very remnant that may have escaped defendant's cleaning effort more than a month earlier. We can not say that this challenged finding of the court is clearly erroneous.

 Appellant challenges the finding of the court that plaintiff had failed to prove the defendant guilty of negligence or that plaintiff was not entitled to restitution. Ordinarily the question of negligence is one of fact to be determined by a jury where the case is tried to a jury, or by the court where the case is tried to the court without a jury. The burden of proof on this issue was on appellant and the finding of the court should not be set aside unless clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. The trial court in considering this charge of negligence among other things said,

"It may be stated as a general rule that a manufacturer is required to exercise reasonable care in manufacturing an article which, if carelessly manufactured, is likely to cause more than trivial harm to those who use it in the manner for which it is manufactured. Restatement, Torts (1934 Ed.) Section 395. However, the defendant is only required to exercise reasonable care and the burden is on plaintiff to show that the defendant has failed to exercise such care in one or more of the particulars in which reasonable care is required for the protection of those whose safety depends upon the character of the chattel. The court is not convinced that the defendant failed to exercise the care required.

" 'The particulars in which reasonable care is usually necessary for protection of those whose safety depends upon the character of the chattels are, (1) the adoption of a formula or plan which, if properly followed, will produce an article safe for the use of which it is sold, (2) the selection of material and parts to be incorporated in the finished article, (3) the fabrication of the article by every member of the operative staff no matter how high or low his position therein, (4) making such inspections and tests during the course of manufacture and after the article is completed as the manufacturer should recognize as reasonably necessary to secure the production of a safe article, and (5) the packing of the article so as to be safe for those who must be expected to unpack it.' Restatement of Torts, Section 395, Comment C.

"The defendant cannot be said to have failed to exercise care in the first particular mentioned above because, in general, Fruehauf, and not defendant, determined the design and specifications of the chattel and also the methods and modes of manufacture. In regard to particular number 2, there is neither allegation nor evidence that the defendant failed to use care in selecting the materials to be incorporated in the tank trailer. The difficult question arises in connection with particular number 3. Every member of the defendant's operative staff was required to use reasonable care in the fabrication of the tank trailer. Does the fact, which has been assumed for the purposes of discussion, that a piece of welding rod ap-

proximately two inches in length and one-eighth of an inch in diameter was present somewhere in the tank when it was delivered by defendant to Fruehauf show that some member of the defendant's operative staff failed to use reasonable care in his work on the tank? The court is of the opinion that this fact, in and of itself, does not convincingly establish that defendant's employees failed to use due care. To hold otherwise, the court would have to assume that if all the defendant's employees exercised reasonable care in manufacturing the tank trailer according to the specifications and in the manner suggested by Fruehauf that a piece of welding rod would not have been overlooked. This assumption does not seem to be in harmony with the testimony of the plaintiff's own witness, Mr. Owens. He stated that in spite of all the cleaning of the interior of the tank by the defendant's clean-up boys, frequently pieces of metal and foreign material lodged in the braces or baffle plates and that presence of foreign material in the tank was frequent enough to be a recognized hazard in the industry and that he knew of no procedure which would insure that the sweeping and cleaning would remove all foreign material from the tank. As to the fourth particular, which requires making such inspections and tests during the course of manufacture and after the article is completed as the manufacturer should recognize as reasonably necessary for the production of a safe article, the court is unable to find that the defendant was negligent in this respect. Particular number 5, which has reference to the packing of the article so as to be safe for those who must be expected to unpack it, is not material to the present case."

We are in accord with the views thus convincingly expressed by the trial court.

 But even if it might be said that there were doubt as to the finding of the court on the question of the sufficiency of the proof to establish negligence, it would not necessarily follow that defendant would be liable. The relation of the parties involved in these transactions was unusual. Fruehauf was a manufacturer of truck-trailers and operated numerous plants throughout the country. Among the types of bodies manufactured by it were trailers bearing tanks to be used in the transportation of gasoline. It maintained and operated such a plant in Omaha in which it fabricated and assembled the undercarriage upon which the tank was to ride, but the fabrication of the tank was sub-contracted to the defendant. In fact the defendant's plant is adjoined to and connected with the plant of Fruehauf. Defendant is a small operator producing no more than 8 to 12 tanks per week. It did not manufacture for anyone else and Fruehauf took its entire output. Fruehauf determined design, material, and method of manufacture. A witness for Fruehauf testified that the work that the defendant does is completely specified; to-wit, the type of material they are to use, the size, and the method of production. Defendant constructs the tank under the directions and specifications of Fruehauf in the same manner that Fruehauf manufactures it in its own plants. Defendant was not at liberty to change the design of the tank unless so specified by Fruehauf. Neither did Fruehauf rely upon defendant's ability to follow instructions, for every phase of the fabrication was under constant supervision by Fruehauf. This was shown by plaintiff's own witnesses. The inspection of the tank was exclusively within Fruehauf's domain. It selected the inspector, paid his salary as one of its permanent employees, and controlled everything he did. This inspector had authority to reject work for any defect in material or workmanship. Fruehauf determined the number, frequency, and extent of inspections. It did not require defendant to make tests or inspections, but instead it undertook to do so. It also appears from the evidence that a device, referred to in the record as a line strainer, might have been attached to this tank in such a way as to have prevented the accident which occurred, but this was a matter wholly within the province of Fruehauf, and it failed to order the attachment on this particular tank although it had often done so before and after

the tank in question was built. Fruehauf knew this essential safety device would effectively safeguard against the known hazard of hidden debris. Under these circumstances we think no liability could attach to the manufacturer. Leavitt v. Fiberloid Co., 196 Mass. 440, 82 N.E. 682, 15 L.R.A.,N.S., 855; Olds Motor Works v. Shaffer, 145 Ky. 616, 140 S.W. 1047, 37 L.R.A.,N.S., 560; Ford Motor Co. v. Wagoner, 183 Tenn. 392, 192 S.W.2d 852, 164 A.L.R. 364; Cain v. Quannah Light & Ice Co., 131 Okl. 25, 267 P. 641, 644.

In Cain v. Quannah Light & Ice Co., supra, an electric light company built a power substation according to plans and specifications prepared by the engineers of the gypsum company. An employee of the gypsum company was injured and the Hartford Accident & Indemnity Company, insurer of the gypsum company, sought indemnity from the electric light company. In the course of the opinion by the Supreme Court of Oklahoma it is among other things said,

"The substation was constructed under contract with the gypsum company and under supervision of its chief engineer. It was constructed as the gypsum company desired. It was accepted by the said company with full knowledge as to the manner of construction. The negligence complained of was the manner in which the station was constructed. Its dangerous condition was as obvious to the gypsum company as to the defendant. In these circumstances, it occurs to us that it cannot be seriously contended that the gypsum company was free from wrong, and that the fault and wrong was wholly the fault and wrong of the defendant."

We conclude that the court did not err in holding that plaintiff had not proven such negligence on behalf of the defendant as entitled it to recover.

It is urged that the court erred in concluding that no implied warranty of fitness existed. Defendant contends that because it had given a special warranty this precluded all implied warranties touching the same matter or inconsistent therewith. In view of our conclusion on other questions determinative of the issues here involved we pretermit consideration of this issue.

We have heretofore observed that Fruehauf determined the design, material and method of manufacture which defendant employed under its supervision and direction and that Fruehauf did not rely upon defendant's skill and judgment. The trial court so found and its finding is clearly warranted by the evidence. Nebraska has adopted the Uniform Sales Act, R.S.R. Neb. 1943, Sec. 69–415. We quote the following provision:

" * * * there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

It is observed that under this statute an implied warranty of fitness does not arise unless it appears that the buyer relies on the seller's skill or judgment. Reliance upon the seller's skill or judgment is an essential factor. Davenport Ladder Co. v. Edward Hines Lbr. Co., 8 Cir., 43 F.2d 63; Dodge v. Dickson Mfg. Co., 2 Cir., 113 F. 218; Dunbar Bros. Co. v. Consolidated Iron-Steel Mfg. Co., 2 Cir., 23 F.2d 416; Rhynas v. Keck, 179 Iowa 422, 161 N.W. 486; Zielinski v. Potter, 195 Mich. 90, 161 N.W. 851, L.R.A.1917D, 822; E. P. Stacy & Sons v. Moher, 200 Mich. 81, 166 N.W. 849; Salzman v. Maldaver, 315 Mich. 403, 24 N.W.2d 161, 168 A.L.R. 381; 2 Mecham on Sales, Sec. 1347; 46 Am.Jur. 532. In the article on Sales, appearing in 46 Am.Jur. at page 532, the rule is thus stated:

"As a general rule, notwithstanding goods are sold for a particular use, if the buyer himself understands what he wants and has a full opportunity to acquire a knowledge of any fact neces-

sary to enable him to form a correct estimate, and selects such goods as he deems adapted to the intended use, there is no warranty of their fitness for such use."

In 2 Mecham on Sales, Sec. 1347, the rule is thus stated:

"The implied warranty of fitness is not to be extended to cases which lack the necessary conditions upon which it depends. The essence of the rule is that the contract is executory; that the particular article is not designated by the buyer; that only his need is known; that he does not undertake or is not able to determine what best supplies his needs, and therefore necessarily leaves the seller to make the determination and take the risk; and if these elements are wanting, the rule does not apply."

Here Fruehauf designed, directed, supervised and inspected. It did not rely upon the skill or judgment of the defendant and the court was clearly warranted in so finding. Fruehauf was in the business of manufacturing tanks of this type and had knowledge, skill and judgment equal to or superior to that of the defendant. It not only did not rely upon the skill or judgment of the defendant but had no occasion to do so. In Davenport Ladder Company v. Edward Hines Lumber Co., supra [43 F.2d 67], we said inter alia:

"The raising of an implied warranty of fitness depends upon whether the buyer informed the seller of the circumstances and conditions which necessitated his purchase of a certain character of article or material, and left it to the seller to select the particular kind and quality of article suitable for the buyer's use."

What is said by the Supreme Court of Michigan in Zielinski v. Porter, supra, is here peculiarly apposite. It is there said:

"Where a purchaser by reason of his knowledge and occupation is in as good a position to judge as to the fitness of the article * * * as the vendor is, the doctrine of caveat emptor applies. While it is true that, where a private individual buys for his own use and consumption from a vendor who is a dealer in the business of handling such articles, there is an implied warranty as to fitness for the purpose for which they are sold, nevertheless, *where there are two dealers negotiating between themselves, each having an equal chance to inspect the article and each with equal knowledge, it does not apply.*" (Emphasis supplied.)

In the instant case the defendant was not by reason of its skill or judgment in any better position than Fruehauf to determine whether or not the tank would be fit for the transportation of gasoline. Fruehauf knew as well as defendant the defects and faults that were likely to arise in the manufacture of this tank. It is admitted in the record that notwithstanding all efforts to remove the foreign material it sometimes lodged in the interstructure and a witness for the plaintiff referred to this as a recognized hazard of the industry. That being true, Fruehauf under all the circumstances here disclosed assumed the risk of accepting this tank.

It must be borne in mind too that Fruehauf inspected this tank before accepting it, in addition to having designed it and supervised its construction. The Nebraska statute, Sec. 69–415(3), expressly provides that,

"If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed."

In Dunbar Bros. Co. v. Consolidated Iron-Steel Mfg. Co., supra [23 F.2d 419], it is said:

"* * * no implied warranty may be imposed here, because the plaintiff had an opportunity for reasonable examination".

Fruehauf knew that foreign material does lodge in the tank in the course of manufacture and it undertook a regular course of procedure to inspect for the specific purpose of ascertaining "that the tank was clean and ready for operation."

The conclusion of the trial court that there was no implied warranty is, we think,

abundantly sustained and we conclude that the court committed no prejudicial error in the trial of this action. The judgment appealed from is therefore affirmed.