AMBASSADOR STEEL COMPANY *v.* EWALD STEEL COMPANY

1. SALES — WARRANTY — IMPLIED WARRANTY — MERCHANTABILITY — PARTICULAR PURPOSE — UNIFORM COMMERCIAL CODE.

> A warranty of merchantability warrants that goods sold by a merchant are of average quality within the industry, whereas a warranty of fitness for a particular purpose warrants that the goods are fit for the purpose for which they are intended and for this warranty to be implied the seller must know, at the time of the sale, the particular purpose for which the goods are intended and that the buyer relies on the seller to select or furnish suitable goods (MCLA §§ 440.2314, 440.2315).

2. SALES — WARRANTY — IMPLIED WARRANTY — MERCHANTABILITY — GOODS FOR RESALE — UNIFORM COMMERCIAL CODE.

> An implied warranty of merchantability obtains even though the goods of the sale are intended and used by the buyer for resale (MCLA § 440.2314).

3. SALES — WARRANTY — IMPLIED WARRANTY — MERCHANTABILITY — COURSE OF PERFORMANCE — USAGE OR CUSTOM OF TRADE — UNIFORM COMMERCIAL CODE.

> An implied warranty of merchantability may exist in a sale of goods even though there has been no mention of quality between

REFERENCES FOR POINTS IN HEADNOTES

[1–4, 6]  46 Am Jur, Sales §§ 341–345.
[5]  46 Am Jur, Sales § 342.
[7]  22 Am Jur 2d, Damages §§ 291, 297, 330.
[8, 9]  46 Am Jur, Sales §§ 615–644.

the parties to the sale based on the course of performance between the parties or by custom or usage in the trade; an implied warranty of merchantability that steel would be of "commercial quality" was properly found by the court where the buyer made no particular request concerning the steel ordered and there was evidence that in the steel business, when an order is placed without specification, custom and usage of the business is that the steel will be of "commercial quality" and that if one desires steel of other than "commercial quality" it must be specified in the order (MCLA § 440.2314).

4. SALES — WARRANTY — MERCHANTABILITY — PARTICULAR PUR-POSE — UNIFORM COMMERCIAL CODE.

The court need not decide whether a use to be made of steel was a "particular purpose" within the meaning of the Uniform Commercial Code where it is shown that the quality of steel that should have been, but was not, supplied under the general warranty of merchantability would have been sufficient for the use made of the steel in the particular case (MCLA §§ 440.2314, 440.2315).

5. SALES — WARRANTY — MERCHANTABILITY — EXCLUSION — MODI-FICATION — INSPECTION OF GOODS — UNIFORM COMMERCIAL CODE.

An implied warranty of merchantability in a sale under the Uniform Commercial Code may be excluded or modified where the buyer has inspected the goods or has refused to inspect them after the seller has demanded inspection with respect to defects that an examination ought to have revealed in the circumstances; the implied warranty of merchantability that steel will be of "commercial quality" was not excluded where the buyer had not inspected the steel, the seller did not demand inspection, and where defects could not be revealed by reason-able examination because a test for carbon content, not a mere examination, would be necessary to determine whether the steel was of "commercial quality" (MCLA § 440.2316).

6. SALES—BREACH OF WARRANTY—MERCHANTABILITY.

A claim of breach of warranty is a valid defense in an action on a sales contract for the price; where the defendant has shown that the plaintiff impliedly warranted the steel being sold as being of "commercial quality" and that the plaintiff did not, in fact, sell the defendant steel of "commercial qual-ity", he has sustained a claim for breach of the implied war-ranty of merchantability (MCLA § 440.2314).

7. DAMAGES—BREACH OF CONTRACT—MITIGATION OF DAMAGES—DUTY
—BURDEN OF PROOF.

It is the duty of an injured party seeking damages to mitigate
damages and thus minimize his loss, and the burden of proof
is upon the noninjured party to show that the injured party
has not used every reasonable effort within his power to
minimize damages.

8. DAMAGES—BREACH OF CONTRACT—MEASURE OF DAMAGES—INJURED
PARTY—CHARGE-BACKS.

The object of the measure of damages is to put the injured
party in as good a position as he would have been if perform-
ance had been rendered as promised; in an action for the price
of a contract in which the plaintiff seller impliedly warranted
that steel would be of "commercial quality", the defendant
buyer sold that steel to a customer and the customer charged
back to the defendant buyer expenses incurred because of
defects in the steel, which was not of commercial quality, the
defendant buyer must recover from the plaintiff seller those
charge-backs if he is to be put in as good a position as he
would have been had the plaintiff sold him steel of the quality
warranted and should be reimbursed for these charges or given
the right to set off these charges against the plaintiff in the
plaintiff's action for the price.

9. DAMAGES—BREACH OF CONTRACT—SETOFF—BREACH OF WARRANTY
—EVIDENCE.

Invoices sent to a defendant by its customer for costs incurred
by the customer in rebuilding railroad cars, necessitated be-
cause steel sold by plaintiff to defendant and resold by defend-
ant to the customer was not of the "commercial quality" im-
pliedly warranted by plaintiff, consisting of labor costs, steel
costs, weld and paint costs, and switching costs were sufficient
to prove a setoff, as damages for breach of warranty, where
the plaintiff did not show that the charges in the invoices
were unreasonable and did not sustain its burden of proving
that defendant failed to mitigate damages in an action by
the plaintiff for the price of the steel (MCLA § 440.2314).

Appeal from Wayne, Thomas J. Foley, J. Sub-
mitted Division 1 April 2, 1971, at Detroit. (Docket
No. 9118.) Decided May 19, 1971. Leave to appeal
denied, 386 Mich 754.

Complaint by Ambassador Steel Company, Inc.,
in Detroit Common Pleas Court against Ewald Steel

Company, Inc., for breach of contract. Judgment for plaintiff. Plaintiff appealed the amount to Wayne County Circuit Court. Judgment affirmed. Plaintiff appeals by leave granted. Affirmed.

*Frazer & Popkin,* for plaintiff.

*Kasoff, Young, Gottesman & Kovinsky* (by *Arvin J. Pearlman*), for defendant.

Before: J. H. GILLIS, P. J., and FITZGERALD and T. M. BURNS, JJ.

FITZGERALD, J. This is an appeal by leave granted from a circuit court order affirming a judgment of the common pleas court for $1,055.78 in favor of plaintiff in an action in assumpsit. Plaintiff appeals the judgment as inadequate.

Plaintiff and defendant are both merchants in the business of the sale of steel. On or about October 4 and 5, 1966, plaintiff sold a certain amount of steel to defendant. The purchase price of the steel was $9,856.44, of which defendant paid $4,107.60, leaving an unpaid balance of $5,748.84. Plaintiff brought an action in the common pleas court to recover the balance due, waiving all amounts over $5,000 so as to bring the matter within the jurisdiction of that court.

Defendant admitted the purchase price of the steel, but claimed a setoff, alleging that plaintiff breached its implied warranty of merchantability in that plaintiff failed to supply defendant with "commercial quality" steel, that is, steel with a carbon content of 1010 to 1020. The defect came to light when the company to whom the defendant in turn sold the steel informed defendant that the steel

cracked after being welded onto railroad cars. As a result of this, defendant's customer charged back its losses to defendant. Defendant thus claimed the setoff against plaintiff.

The trial court allowed defendant to set off the entire amount of the charge-back, with the exception of a claim for overhead, and entered a judgment for plaintiff in the amount of $1,055.78. Plaintiff appealed to the circuit court, contending the judgment was inadequate. The circuit court affirmed, plaintiff applied for leave to appeal to this court and we granted it.

Plaintiff on appeal raises four issues which will be dealt with *seriatim.*

The first issue can be stated in the following form:

As between dealers in steel, is there an implied warranty that the steel is merchantable for the purpose for which it is used, where plaintiff was not advised by defendant of the use to which the steel was to be put?

Plaintiff contends on appeal that because defendant did not inform plaintiff of the purposes for which the steel was to be used, defendant cannot claim that it was not fit for the purpose for which it was used. Defendant, however, appears to be relying on a different implied warranty, that of merchantability, and not that of particular fitness.

Section 2-314 of the Uniform Commercial Code provides, in part:

"(1) Unless excluded or modified * * * , a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. * * *

"(2) Goods to be merchantable must be at least such as:

(a) pass without objection in the trade under the contract description; and

(b) * * *

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) * * *

(f) * * *

"(3) Unless excluded or modified * * * , other implied warranties may arise from course of dealing or usage of trade." (MCLA § 440.2314 [Stat Ann 1964 Rev § 19.2314]).

This section is further explained in the Comments of National Conference of Commissioners following the section, which states:

"2. The question when the warranty is imposed turns basically on the meaning of the terms of the agreement as recognized in the trade. Goods delivered under an agreement made by a merchant in a given line of trade must be of a quality comparable to that generally acceptable in that line of trade under the description or other designation of the goods used in the agreement."

Thus, unless there is an exclusion or modification, when, as here, a merchant sells such goods, an implied warranty arises that the goods would pass without objection in the trade under the contract description; also, that they are fit for the ordinary purposes for which the goods are used.

The implied warranty of merchantability is decidedly different from the implied warranty for a particular purpose that arises under MCLA § 440.2315 (Stat Ann 1964 Rev § 19.2315). The particular purpose warranty is defined by the official UCC comment as:

"2. A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains."

It appears, then, that the warranty of merchantability warrants that the goods sold are of average quality within the industry, whereas a warranty of fitness for a particular purpose warrants that the goods sold are fit for the purposes for which they are intended. The latter is also further qualified by the requirement that the seller must know, at the time of sale, the particular purpose for which the goods are required and also that the buyer is relying on the seller to select or furnish suitable goods.

In the instant case, it is undisputed that the plaintiff was not made aware of the purpose for which the steel was to be used. Therefore, the implied warranty of fitness for a particular purpose did not arise under MCLA § 440.2315 (Stat Ann 1964 Rev § 19.2315).

The question then becomes whether or not the steel sold by plaintiff to defendant was subject to the implied warranty of merchantability under MCLA § 440.2314 (Stat Ann 1964 Rev § 19.2314). Although defendant sold the goods to a third party, MCLA § 440.2314 (Stat Ann 1964 Rev § 19.2314) Comment 1 states that the warranty of merchantability applies to goods sold for resale as well as those for sale. And, as we previously stated, Comment 2 of the same section states that the question of when

the warranty is imposed turns basically on the meaning of the terms as recognized in the trade.

MCLA § 440.1205(2) (Stat Ann 1964 Rev § 19-.1205[2]) defines a usage of trade as "any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question".

MCLA § 440.1205(3) (Stat Ann 1964 Rev § 19-.1205[3]) provides, "A course of dealing between parties and any usage of trade in the vocation in which they are engaged or of which they are or should be aware give particular meaning to and supplement or qualify terms of an agreement".

Testimony in the transcript indicates that defendant made no specific request concerning the particular quality of steel they ordered. However, there was also ample testimony below to the effect that when an order is placed without specification as to the particular quality desired, custom and usage of the steel business is that a "commercial quality" steel, that is, steel with a carbon content between 1010 and 1020, is to be used. Further testimony was to the effect that if one desired steel other than "commercial quality" it must be specified in the order, according to local custom and usage. The testimony indicated that the steel sold by plaintiff to defendant was not within the commercial range, thus the steel cracked after being welded. Therefore, plaintiff breached the implied warranty of merchantability in selling to defendant steel of a different quality than ordinarily sold in the custom and usage of the steel business, and not fit for the ordinary purposes for which such goods are used. MCLA § 440.2314 (Stat Ann 1964 Rev § 19.2314).

Plaintiff raises the point that they were not notified of the purpose to which the steel was to be put.

Apparently plaintiff implies that the use made of the steel was a particular purpose and thus not an ordinary purpose.  We have already held that plaintiff is not liable for any implied warranty for fitness for a particular purpose.  Furthermore, we need not decide whether this was a particular purpose, because the quality of steel that should have been delivered under the general warranty of merchantability, but was not, was sufficient to satisfy the use in the instant case.

Plaintiff also raises the contention that there can be no implied warranty because defendant did not inspect the goods.  Plaintiff cites *Salzman* v. *Maldaver* (1946), 315 Mich 403, to support this contention.

*Salzman* suggests that one who buys an article that is subject to his inspection, but does not inspect it, cannot later claim breach of an implied warranty.  However, *Salzman* was decided under the Uniform Sales Act, CL 1929, § 9454 (Stat Ann § 19.255), which was superseded by the UCC.  The pertinent part of the UCC is MCLA § 440.2316(3)(b) (Stat Ann 1964 Rev § 19.2316 [3][b]) which provides:

"When the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him."

Thus, under the above section it appears that the buyer must have in fact examined the goods, not the case here, or must have refused a demand by the seller that he do so, also not the case here.  Additionally, the section applies only to defects that would have been revealed upon examination.  There is testimony in the record indicating that in order

to have discovered the defect in the steel, a test for carbon content, not merely an examination, would have had to have been made. Thus, a reasonable examination would not have revealed the defects in the steel. We therefore hold that MCLA § 440-.2316(3) (b) (Stat Ann 1964 Rev § 19.2316[3] [b]) did not exclude or modify the implied warranty of merchantability in the instant case.

Plaintiff next raises the issue that defendant did not sustain the burden of proving that plaintiff had breached the contract. We agree; defendant did not sustain the burden of proving plaintiff had breached the contract. However, defendant did not need to do so. What defendant needed to do, and what the record shows he did do, was prove that plaintiff had breached its implied warranty of merchantability. Defendant proved below that plaintiff impliedly warranted the steel sold as being of "commercial quality", that the plaintiff did not, in fact, sell to defendant steel that was of "commercial quality", and that if the steel had been of "commercial quality" it would not have cracked after being welded onto the railroad cars. This is sufficient to sustain an action for breach of warranty. See UCC, § 2-314, Official Comment 13.

Plaintiff next contends that the defendant did not use every reasonable effort to mitigate damages.

It is the duty of an injured party seeking damages to mitigate damages and thus minimize his loss, and the burden of proof is upon the other party to show that the injured party has not used every reasonable effort within his power to minimize damages. *Edgecomb* v. *Traverse City School District* (1954), 341 Mich 106. The record does not indicate that plaintiff satisfied the burden of proof to show that defendant failed to mitigate the damages. The

record indicates that defendant's customer returned a portion of the steel to defendant and gave defendant a credit therefor. Defendant then returned this portion to plaintiff.

This Court has stated that the object of the measure of damages is to put the injured party in as good a position as he would have been in if performance had been rendered as promised. *Dierickx* v. *Vulcan Industries* (1968), 10 Mich App 67. In the instant case, after the defect in the steel was discovered, the railroad cars had to be recalled, stripped and refabricated. Defendant was charged for these operations by his customer. There is scant authority to support a contention that defendant should not be reimbursed by plaintiff for these charges. Indeed, defendant must recover these charges against him if he is to be put in as good a position as he would have been if the steel had been of commercial quality. *Dierickx* v. *Vulcan Industries, supra.* If the steel had been of commercial quality in the first place, defendant would not have suffered these charges.

Last, and somewhat repetitiously, plaintiff contends that defendant did not prove the damages sustained. The trial court allowed defendant to set off, as damages, amounts that defendant's customer had charged back to it for (1) labor costs, (2) steel costs, (3) weld and paint costs, and (4) switching costs. The trial court disallowed a setoff for an overhead charge-back. These charge-backs against defendant were established by the introduction into evidence of an invoice sent to defendant by defendant's customer. The invoice was admitted as a business record. MCLA § 600.2146 (Stat Ann 1962 Rev § 27A-.2146). Plaintiff did not show that these charges were unreasonable, or that defendant could have done anything to mitigate them. Plaintiff failed to

sustain the burden as required by *Edgecomb* v. *Traverse City School District, supra.*

Therefore, the lower court should be, and hereby is, affirmed. Costs to appellees.

All concurred.