**PACIFIC MARINE SCHWABACHER, INC.,**
Plaintiff and Respondent,

v.

**HYDROSWIFT CORPORATION,**
Defendant and Appellant.

No. 13532.

Supreme Court of Utah.

Aug. 2, 1974.

Paul N. Cotro-Manes of Cotro-Manes, Warr, Fankhauser & Beasley, Salt Lake City, for defendant and appellant.

Zar E. Hayes of Pugsley, Hayes, Watkiss, Campbell & Cowley, Salt Lake City, for plaintiff and respondent.

CALLISTER, Chief Justice:

Plaintiff is a wholesale distributor of boats and marine products in the Pacific Northwest, with offices in Seattle, Washington. Defendant manufactures various types of boats at its plant in Salt Lake City, Utah. The subject matter of this dispute is a small acrylic plastic boat, identified as a TR110, which is approximately eleven feet long and weighs 125 pounds and is designed to be transported on top of an automobile and used for fishing. Plaintiff initiated this action to recover the purchase price of 27 TR110 boats that it had bought from defendant on the ground that the merchandise was defective, was not as represented by defendant, was not fit for the purposes intended, and was not salable. Upon trial before the court, judgment was rendered in favor of plaintiff; defendant appeals therefrom.

In the autumn of 1970, defendant's sales representative Mr. Franklin, contacted plaintiff's General Manager of the Marine Division, Mr. Bauer, and submitted certain pieces of acrylic, which he represented were used in the construction of the TR110. One of the pieces was composed of two flat sheets of acrylic fused with a fiberglass center. The other piece illustrated the effect of the molding process by which the boats were constructed on the two fused sheets of acrylic, i. e. the thickness of the laminant decreased in the curved sections. Mr. Franklin and defendant's Marketing Manager, Mr. Thomas, assembled a boat, which Mr. Franklin left with Mr. Bauer for thirty days as a model of the TR110. Plaintiff initially ordered 12 boats; on December 29, 1970, plaintiff ordered 60 boats, which defendant delivered in Seattle, Washington in February, 1971. After a minor adjustment for some superficial shipping damage, plaintiff paid the purchase price of $8,698.20 ($144.97 per unit) on March 1, 1971. Plaintiff then proceeded to market the boats to retailers in March and April.

The TR110 is a double hull boat. A sheet of raw acrylic is heated to a high temperature, when it becomes pliable it is vacuumed into a mold; both male and female units are so constructed. The outer hull is reinforced with fiber glass and the inner hull is then bonded thereto with resins. The two sections do not touch in the areas of the seat, flotation compartment, and the forward deck. Mr. Thomas, while employed by defendant, designed, prepared and initiated the production of the TR110. Production began approximately in August of 1970, and plaintiff's order of 60 units

was the largest single order filled. Mr. Thomas testified that it was not part of the design that the fiberglass portion should be waterproofed, since the outer acrylic coating would serve this purpose.

Mr. Bauer testified that after fishing season began in mid-April, he began receiving complaints from dealers that the boats were filling with water between the inner and outer hulls. This condition made the boats unmanageable and increased their weight. He contacted Mr. Thomas, who suggested that marine sealant be applied to certain screw holes; this did not alleviate the condition. Several dealers returned boats, and Mr. Bauer observed that the acrylic had peeled off along the bottom and around the back of the transom. He further observed that the plastic was eggshell-thin in spots on other boats. He compared the boats with the materials that he had been submitted initially and which had been represented as the quality of the construction, and he found the acrylic on the boats much thinner. He notified defendant by letter that the thickness of the acrylic was not as represented; that it was eggshell-thin and that with one pull upon the beach, it began to peel. Mr. Bauer requested that defendant pick up the remaining boats that he had in his stock and six that had been returned.

Mr. Franklin testified that he had observed the boats in the spring of 1971, and they were inferior to the pilot model; along the keel line and chine line in the area of the transom the acrylic was deficient. He testified that on some of the boats he observed in plaintiff's warehouse the acrylic was wrinkled in some areas where it was thin. The witnesses who testified appeared to be in agreement that the beaching of the TR110 was an integral part of the ordinary use of the boat.

The trial court found and the record so substantiates that plaintiff, upon discovery of the defects notified defendant of its revocation of acceptance of the boats and requested defendant pick up the boats remaining in plaintiff's warehouse and re-

fund the purchase price. Defendant recognized this revocation and agreed to pick up the remaining boats. On November 22, 1971, defendant picked up six of the boats but refused to transport the remaining 21. Defendant has refused to refund any of the purchase price, although defendant admitted that it had repaired the six boats and resold them. The trial court further found that by reason of defendant's failure to pick up 21 boats, plaintiff was required to store them and was entitled to the reasonable value of the storage space in the sum of $1,008.00.

Mr. Denning, a sales representative of defendant, testified that he repaired and purchased one of the six boats which plaintiff had returned. He stated that the acrylic had worn down and chipped away in the area of the bow and the keel line. He patched the area with a fiberglass mat and cloth and not with acrylic. This patch was approximately three feet long and six inches wide. Subsequently, he applied an additional patch of the same type which extended farther back on the bottom of the boat. The trial court went to a parking lot and personally examined Mr. Denning's boat.

Based on the foregoing facts, the trial court found that the boats were defective and not as represented and were not fit for purposes intended and were not salable or merchantable, particularly, the boats were not so constructed as to prevent leakage when exposed to ordinary and usual usage and were not constructed in a manner or from materials as represented by the defendant. Plaintiff was granted judgment in the sum of $3,914.19, representing the purchase price of 27 boats plus interest and storage charges. Defendant was granted the right for 30 days to pick up at its own expense the remaining 21 boats in plaintiff's warehouse in Seattle. Thereafter plaintiff was to be permitted to dispose of them in any manner it might determine proper.

On appeal, defendant contends that the trial court erred in admitting testimony in-

volving express warranties including sale by sample on the ground that such issues were neither raised by the pleadings nor tried by the express or implied consent of the parties. Rule 15(b), U.R.C.P.

In paragraph 2 of plaintiff's complaint it pleaded:

That said merchandise, to wit, the said boats, were defective and not as represented by defendant and were not fit for the purposes intended and were in no way salable merchandise.

Before the trial court, defense counsel claimed that no warranty had been pleaded and that any evidence relating thereto was outside of the pleadings. He further urged that plaintiff's failure to plead Section 70A–2–313, U.C.A.1953, as amended 1965, precluded presentation of any evidence in regard to breach of the express warranties set forth thereunder.

The trial court overruled defendant's objections and found that paragraph 2 of plaintiff's complaint was sufficient to raise the issues of breach of express and implied warranties.

■ Plaintiff's complaint fully complied with Rule 8(a), U.R.C.P., as a short and plain statement of its claim showing that the pleader was entitled to relief, and with a demand for judgment. The allegation setting forth that the merchandise was not as represented was sufficient to establish a claim of an express warranty as provided in Section 70A–2–313, U.C.A.1953, as amended 1965, and a violation thereof. The allegations concerning the fitness of the boat for the purpose intended and the salability of the merchandise set forth a claim of an implied warranty of merchantability as provided in Section 70A–2–314, U.C.A.1953, as amended 1965, specifically subsection (2)(c), which provides that for goods to be merchantable, they must be at least such as are fit for the ordinary purposes for which such goods are used. The trial court did not err in its ruling that the plaintiff was entitled to present evidence

tending to prove the existence of these warranties.

Defendant further contends that the trial court erred in its finding that the boats were defective and not as represented. Defendant proceeds on the supposition that the small piece of molded acrylic presented by defendant to plaintiff prior to the contract was interpreted by the trial court as a "sale by sample," and that defendant breached its warranty by failure to deliver boats comparable to the sample.

■ Defendant is correct in his contention that the piece of molded acrylic did not create a "sale by sample" as provided in Section 70A–2–313(1)(c), U.C.A.1953, as amended 1965. A "sample" is actually drawn from the bulk of the goods which is the subject matter of the sale; a "model" is an item offered for inspection when the subject matter is not at hand and has not been drawn from the bulk of the goods.[1] However, the piece of molded acrylic and the representations made in regard thereto could be found to constitute express warranties under Section 70A–2–313(1)(a) or (b), U.C.A.1953, as amended 1965.

Subsection (1)(a) provides: "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

Subsection (1)(b) provides: "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."

■ Under the Uniform Commercial Code, Section 2–313, sales by description, sample, or model constitute express warranties. Since these warranties arise by the language, acts, or conduct of the parties, it is logical that these be considered express warranties. A description of the goods may be by words or may be expressed in any other manner, such as, use

---

1. See Official Comment, paragraph 6, of Sec. 2–313, Uniform Commercial Code.

of technical specifications or blueprints, which may be more exact than language. As long as they are made part of the basis of the bargain the goods must conform.[2] The question of the existence of a warranty and whether the warranty was breached is ordinarily one for the trier of fact.[3]

Defendant further asserts that since the plaintiff had in its possession an actual "model" or "sample" of the boat, plaintiff could not have relied solely on the piece of molded acrylic in purchasing the boats.

■ Under the findings of the trial court both the piece of molded acrylic and the model boat could constitute representations as to the quality of the goods by the seller and be considered part of the basis of the bargain and thus express warranties. There was sufficient evidence, through the testimony of Mr. Bauer and Mr. Franklin, that the boats delivered to plaintiff were not of the same quality as represented.

Defendant further contends that there was no evidence that the boats were not fit for the purposes for which intended. Defendant argues that there was no evidence of a technical nature or by experts tending to prove that the boats were unsound or unsafe.

■ The trial court found that the boats were not merchantable or salable in that they were not fit for the ordinary purposes for which such goods were sold, i. e., the implied warranty of merchantability of Section 70A–2–314(2)(c), U.C.A.1953, as amended 1965, was breached.

This warranty is also meant to include protection of the person buying goods for resale to an ultimate consumer. Thus the goods to be merchantable must be honestly resalable in the normal course of business. This is what they purport to be and this would be the ordinary purpose for which the goods are used when they are purchased by a retailer from a wholesaler, distributor, or manufacturer. The same reasoning would run throughout the whole line of distribution, from the manufacturer to the wholesaler, and from wholesaler to the retailer, and so on.[4]

■ There was substantial evidence in the record to sustain the finding that the boats were not resalable.[5]

Defendant further contends that the trial court erred in awarding storage fees to plaintiff.

Section 70A–2–604, U.C.A.1953, as amended 1965, provides that if the seller gives no instructions within a reasonable time after notification of rejection the buyer may store the rejected goods for the seller's account.

■ Defendant, by two different agents, represented that it would pick up the boats. Defendant does not contend that it proffered any further instructions; under such circumstances the trial court properly awarded storage costs.

The judgment of the trial court is affirmed. Costs are awarded to plaintiff.

HENRIOD and TUCKETT, JJ., concur.

CROCKETT, Justice (concurring, and adding comment).

I concur, except that I think it may be helpful to make this observation concerning the trial court's granting the defendant 30 days to pick up its remaining 21 boats in plaintiff's warehouse; and thereafter, permitting plaintiff to "dispose of them in any manner it might determine proper."

---

2. 3 Bender's Uniform Commercial Code Service, Sec. 6.07, p. 6–16.

3. Judd Construction Company v. Bob Post, Inc., Colorado, 13 U.C.C. Reptr.Serv. 800, 802 (1973).

4. 3 Bender's Uniform Commercial Code Service, Section 7.01(3), pp. 7–12 to 7–13; also see Vlases v. Montgomery Ward & Company (CA 3d, 1967) 377 F.2d 846; Ambassador Steel Company v. Ewald Steel Company, 33 Mich. App. 495, 190 N.W.2d 275 (1971).

5. In addition to the six boats returned to plaintiff by retailers, plaintiff had to grant credit for boats it disturbed in Alaska although they were not returned because of freight charges.

Giving the defendant 30 days in which to remove the boats is a reasonable time. However, I know of no authority in law or equity which would permit an outright forfeiture of the defendant's boats for failure to pick them up within 30 days. If defendant does so fail, and the plaintiff does dispose of them, it should credit the defendant with any net proceeds realized therefrom. See Heiselt Const. Co. v. Garff, et al., 119 Utah 164, 225 P.2d 720.

ELLETT, J., concurs in the views expressed in the concurring opinion of CROCKETT, J.