**VENTURE INDUSTRIES CORPORATION and Vemco, Inc., Plaintiffs–Appellants/Cross–Appellees,**

v.

**HIMONT U.S.A., INC., Defendant–Appellee/Cross–Appellant.**

Nos. 02–2172, 02–2194.

United States Court of Appeals, Sixth Circuit.

July 13, 2004.

David J. Young, Squire, Sanders & Dempsey, Columbus, OH, Robert J. Lenihan, II, George T. Schooff, David P.O. Utykanski, Harness, Dickey & Pierce, Troy, MI, Pierre H. Bergeron, Squire, Sanders & Dempsey, Cincinnati, OH, for Plaintiffs–Appellants/Cross–Appellees.

Scott L. Mandel, William R. Schulz, Webb A. Smith, Deanna Swisher, Foster, Swift, Collins & Smith, Lansing, MI, for Defendant–Appellee/Cross–Appellant.

Before DAUGHTREY and CLAY, Circuit Judges, and McCALLA,* District Judge.

* The Hon. Jon Phipps McCalla, United States District Judge for the Western District of Tennessee, sitting by designation.

944

PER CURIAM.

Venture Industries Corporation and VEMCO, Inc. (collectively "Venture" or "the plaintiff") appeal from the district court's grant of partial summary judgment in favor of the defendant, Himont U.S.A., Inc., on the plaintiff's claim for loss of future profits resulting from the defendant's breach of a sales agreement between the parties. After entry of the partial summary judgment order, the parties agreed to submit their dispute to arbitration, but the plaintiff reserved the right to appeal the matter of lost future profits in the event that the defendant was found liable for breach of contract as a result of the arbitration.

The plaintiff was at least partially successful in obtaining an award from the arbitration panel and thereafter proceeded to appeal the district court's ruling on the consequential-damages claim that had been expressly reserved. The defendant cross-appealed, insisting that under the terms of the arbitration agreement, the plaintiff had waived its right to appeal. Because we conclude that the district court was correct in ruling on the merits that the plaintiff had failed to establish a right to consequential damages for loss of future profits, we also conclude that it is unnecessary to address the issue raised by the cross-appeal at length. The result in either event would be the same: if the right to appeal has been waived, the plaintiff cannot bring an appeal; even if it has not been waived, the plaintiff cannot succeed on appeal.

As to the merits, the record indicates that Himont had contracted to produce material that Venture planned to use to manufacture bumper fascias, or sheaths, for Chrysler's Jeep Cherokee, under a contract between Venture and Chrysler covering production for its 1992 program, which was scheduled to run through the 1996 model year. The Venture–Himont contract was executed in May 1992 and was to remain effective until July 31, 1994. When the material supplied by Himont turned out to be defective, however, Venture was forced to find another supplier almost immediately. A few months later, Venture was invited to bid on Chrysler's new 1996 program and did so, but was not successful in securing an extension of its contract. Had the contract been renewed, Venture would have begun supplying bumper fascias under the new Venture–Chrysler contract in July 1995, approximately one year after its sales agreement with Himont expired.

Contending that it had lost the Chrysler contract as the direct result of Himont's breach, Venture sued under the Uniform Commercial Code § 2–715, codified as Michigan Compiled Laws 440.2715. Under subsection (2)(a) of that provision, a buyer may recover consequential damages for "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." M.C.L. 440.2715(2)(a). The district court held that the plaintiff in this case could not "recover lost profits beyond the conclusion of their contract[] with ... Chrysler" and that the plaintiff had successfully covered losses under the existing contract with Chrysler by "finding and using substitute material."

As we read Michigan law, "consequential damages [under the U.C.C.] do not arise within the scope of the immediate buyer-seller transaction, but rather stem from losses incurred by the nonbreaching party in its dealings, often with third parties, which were a *proximate result* of the breach, and which were *reasonably foreseeable* by the breaching party *at the time of contracting.*" *Sullivan Indus., Inc. v.*

*Double Seal Glass Co.,* 192 Mich.App. 333, 480 N.W.2d 623, 631 (1991) (emphasis added). Hence, Michigan courts allow consequential damages "to the extent that the seller had reason to know such damages would follow a breach." *Taylor & Gaskin, Inc. v. Chris–Craft Indus.,* 732 F.2d 1273, 1278 (6th Cir.1984). But although it is clear that lost profits are recoverable under an existing contract, the narrow legal issue in this case is whether Himont could reasonably foresee at the time that the 1992 contract was executed that a breach of the agreement would cause Venture Industries to lose a *future contract* with Chrysler, *after* its contract with Himont had ceased.

Although the plaintiff argues that "[t]he district court usurped the jury's role by treating the issue of foreseeability as a question of law rather than a question of fact," we are convinced from our review of the record that the plaintiff failed to produce sufficient objective evidence of foreseeability to withstand summary judgment in the defendant's favor. Venture would have to show, among other things, that Himont had knowledge of Venture's expectations or that its continued economic success depended on its ability to renew its contract with Chrysler. *See* Comment 3, paragraph 2 to the U.C.C. § 2–715; MCL 440.2715 ("Particular needs of the buyer must generally be made known to the seller while general needs must rarely be made known to charge the seller with knowledge."). The evidence suggests, at most, that in the absence of "some horrendous atrocity," Chrysler would have renewed Venture's contract in 1996 for its program, *i.e.,* until approximately 2001, generating a projected $26 million a year in total revenues for Venture. (See plaintiff's brief at p. 6.) But Venture has not submitted any evidence that Himont was aware of Venture's anticipation that its contract with Chrysler would be extended.

On appeal, the plaintiff argues that "[s]ince Himont assisted Venture in securing the Chrysler contract, it knew or should have known that any missteps at the outset of the program could jeopardize Venture's status as the supplier of ZJ fascias for the life of that program." However, the agreement between Himont and Venture included only the parties' forecast of the amount of material to be supplied under the 1992 contract; nowhere in that agreement or in the record is there any mention of a continued supply after the contract ended in 1994.

In addition, the record fails to establish that Himont's breach proximately caused Venture's loss of the future Chrysler contract. Although Venture offered testimony by a Chrysler employee that if Venture had been able to produce the parts well in the initial start-up of the program, Chrysler would not have solicited bids from other suppliers, the record also shows that Venture submitted the least competitive bid on the 1996 contract.

Finally, there is the issue of coverage under the U.C.C. As the district court noted, an injured party has a duty to mitigate its loss, and Venture could recover the post-contract future lost profits only if the loss "could not reasonably be prevented by cover." M.C.L. 440.2175; *see also Ambassador Steel Co. v. Ewald Steel Co.,* 33 Mich.App. 495, 190 N.W.2d 275, 280 (1971) (holding that it is "the duty of an injured part to mitigate damages"). In this case, Venture covered its loss during the actual Venture–Himont contract period by using materials supplied by an alternate company and then used this same supplier to submit its bid for the 1996 Chrysler contract. Venture argues that the district court incorrectly held that a party could never recover consequential damages when it covers, but we think this argument depends on a misreading of the

district court's ruling. The court did not hold that, as a matter of law, a party could never recover consequential damages if it covered losses caused by a breach. Rather, it held that on the facts of this case, Venture was able to avoid lost profits under the 1992 contract. *Post-contract* damages in this case were not recoverable as consequential damages because, as we held above, they were not reasonably foreseeable.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court.