**K & D DISTRIBUTORS, LTD., Plaintiff,**

v.

**ASTON GROUP (MICHIGAN), INC., Defendant.**

**No. 3:03CV7719.**

United States District Court, N.D. Ohio, Western Division.

Feb. 1, 2005.

Kevin D. Devaney, Eastman & Smith, Stuart J. Goldberg, Eastman & Smith, Toledo, OH, for K & D Distributors, Ltd. represented by, Plaintiff.

James D. Caruso, Arnold & Caruso, James H. O'Doherty, Shumaker, Loop & Kendrick, Toledo, OH, Peter S. Vogel, Gardere, Wynne & Sewell, Dallas, TX, Terrance K. Davis, Shumaker, Loop & Kendrick, Toledo, OH, for Aston Group (Michigan), Inc., Defendant.

## ORDER

CARR, Chief Judge.

This is a contract dispute between a buyer and seller of software. The parties agree that Michigan law governs the contract at issue.

Pending are cross motions for summary judgment. For the following reasons, the motion by seller, Aston Group, Inc. (Aston), shall be granted in part as to Warranty D, but denied as to Warranty A, Warranty B, and damages. The cross-motion of buyer, K & D Distributors, Ltd. (K & D), shall be denied in full.

### Background

K & D operated a mail-order contact lens business. For years, K & D managed its accounts using a UNIX/COBOL order entry and accounting system it had developed. K & D entered into a Technology Purchase Agreement (Agreement) with Aston on December 3, 1999, for replacement of its existing system with a Navision Technology system. K & D wanted the new software to operate in essentially the same manner as the pre-existing system, but with Navision accounting software integrated and customized for K & D's business.

Section 10 of the Agreement limited Aston's warranties with respect to the system it customized for K & D:

The sole warranties made by Seller to Buyer with respect to the Technology are that:

A. Work will [sic] completed in a professional manner by [Aston] staff appropriately qualified to perform the work.

B. Modifications will be completed in a manner that is consistent with the delivered capabilities of the Navision Products.

C. For work done by [Aston], adequate documentation will be delivered with the

system and the documentation will be maintained as directed and authorized by K & D to accurately reflect the delivered modifications for a period of 12 months from the acceptance of the system.[1]

D. [Aston] will fix any programming errors where the customized programs do not operate in a manner that is consistent with the reasonably expected results, for a period of 12 months after acceptance of the system.

The ... warranties listed in Section 10, are in lieu of all other representations or warranties of any kind, either express or implied, including, but not limited to, the implied warranties of merchantability and fitness for a particular purpose, all such warranties being hereby fully disclaimed.

(Doc. 22, Ex. 1 at 4.)

Aston completed the data conversion and custom programming work and went live with the new system on June 24, 2000. Shortly thereafter, K & D began experiencing problems with the system: 1) contact lens orders were shipped to one customer, but were billed to another (the "credit card problem"); and 2) multiple shipments of contact lenses were sent to customers who had not submitted multiple orders (the "re-release problem").

K & D continued to operate the system and deal with customer complaints until November 17, 2000, when it contacted Aston to determine the source of the problems. Aston promptly corrected the problems. In the meantime, K & D claims to have suffered approximately $100,000 in losses.

Aston moved this Court for summary judgment on the basis that it complied with its warranties set forth in the Agreement. K & D opposes the motion and contends that Aston failed to perform all

work in a professional manner and delivered a system that failed to perform as promised. K & D also seeks summary judgment on the issue of whether Aston breached Warranty A and Warranty B.

### Discussion

■ Aston contends that summary judgment should be granted in its favor because: 1) K & D representatives admitted that Aston personnel were professional and qualified and performed all warranted work; and 2) any other alleged failures in performance, if any, are expressly excluded under the language of the contract limiting the available warranties.

In contrast, K & D argues that Aston's motion should be denied because K & D did not admit that Aston performed as warranted and that Aston did not complete all work in a professional manner or provide all system modifications by the go-live date.

#### 1. Warranty A

Aston promised under Warranty A that all work would be completed "in a professional manner by [Aston] staff appropriately qualified to perform the work." (Doc. 22, Ex. 1 at 4.) Aston argues that it is entitled to summary judgment under this warranty because a K & D representative, Cathi Dooley (Dooley), admitted that Aston's representatives "acted in a professional manner," were "qualified," and were "relatively quick in responding after software issues had been identified." (Doc. 22 at 13.)

K & D argues that Aston's motion should be denied because Aston took Dooley's testimony out of context by ignoring other portions of her testimony. K & D also seeks summary judgment on the grounds that the problems experienced after delivery of the system and the subse-

---

1. Warranty C is not at issue.

quent repairs demonstrate that the work was not performed initially in a professional or workmanlike fashion.

Because I find that a genuine issue of material fact exists as to whether Aston completed all work in a professional manner, both parties' motions shall be denied.

First, Aston ignores statements made by Dooley as well as by Brian Ehlert, a systems engineer, that support K & D's contention that the work was not performed in a professional manner. The conclusory statement on which Aston relies is not preclusive of other evidence to the contrary.

When asked to "identify any particular work that was not performed in a professional manner by Aston," Dooley stated: "The credit, the assumption that a credit card number existed in every customer record in the Unix system was something that I would expect to have been unearthed." (Doc. 21 at 65–66.)

Dooley further testified that in her opinion, Aston representative Maki Lin (Lin), should have validated a statement allegedly made by Debra Russell (Russell), K & D's Vice President of Sales and Service at the time, that every customer had a credit card number in the existing system. (Doc. 21 at 67.)

Q. So, so, you're not, you're not testifying today that Miss Lin failed to work in a professional manner because she relied on Miss Russell's representations, are you?

A. I would not have relied on Debra Russell alone.

Q. But you're not saying that that was unprofessional for Miss Lin to rely on it, are you?

A. Potentially.

Q. You're saying that it, that Miss Lin should not rely on an employee of LensFirst who used the system to tell her what was in the files, is that what you're saying?

A. With order of magnitude of that, yes, I would not have relied on a single source.

(Doc. 21 at 70.)

Also, when asked whether "Aston breached the agreement by failing to deliver products that performed as represented?" Dooley stated: "Aston failed to deliver at the deliverable date the system that functioned as outlined." (Doc. 21 at 71.)

Statements made by Ehlert, furthermore, support K & D's contentions that Aston breached their agreement:

Based on my own observations and having taken part in the investigation of the system, it was evident that Aston had not completed all the work in a professional manner. Moreover, the modifications to the system were not completed in a manner consistent with the delivered capabilities of Navision products. Specifically, as a result of pre-live programming by Aston, K & D experienced problems due to duplicate credit card charges and orders being re-released, all of which resulted in product being shipped to customers who did not order product, and other customers being charged for product they did not order.

(Doc. 33, Ex. 1 at 2.)

█ Second, I find that in this case expert testimony is required on the ultimate fact in issue (i.e., whether the work performed by Aston, under all the circumstances, was performed in a professional manner.) Federal Rule of Evidence 702 permits the use of expert testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue ...." Whether Aston performed all work in a professional manner

is a question requiring scientific, technical, and specialized knowledge.

■ The need for expert testimony in this case is analogous to the need for expert testimony on the standard of care in professional malpractice cases.[2] While those cases arise in tort and this dispute is based in contract, the analogy works notwithstanding the differences in the areas of law because here the parties contracted for a specific duty of care—that the work would be performed in a "professional" manner. Determining the meaning of "professional" as used in this contract requires evidence of what a similar professional would have done under like circumstances (i.e., what an ordinary programmer with superior knowledge and experience in converting order entry and accounting systems would have done in defendant's situation). The conduct of a professional under these circumstances is not within the jury's general knowledge and experience.

■ Last, while Aston argues that certain portions of Dooley's deposition testimony should be treated as an admission by K & D that Aston did not breach Warranty A, neither party has presented evidence that Dooley is testifying as anything but a lay witness. Rule of Evidence 701 limits the testimony of lay witnesses:

If the witness is not testify as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Because, neither party has presented evidence that Dooley is qualified to testify as an expert in this case, her testimony as to whether Aston performed all work in a professional manner is beyond her capacity to testify as a lay witness, and thus, for this additional reason, is not determinative of the ultimate issue.

### 2. Warranty B

■ Aston promised in this subsection that all "[m]odifications will be completed in a manner that is consistent with the delivered capabilities of the Navision Products." (Doc. 22, Ex. 1 at 4.)

Aston contends that it did not breach this warranty because the credit card problem was the result of K & D supplying Aston with the wrong information (i.e., Russell told an Aston representative that every customer had a credit card number

---

2. As a general rule Michigan courts require expert testimony in causes of action for professional malpractice. *Lince v. Monson,* 363 Mich. 135, 108 N.W.2d 845, 847 (1961). Explaining the need for expert testimony, the court stated:

In the ordinary negligence case a question is presented whether an ordinary, careful and prudent person would have done as defendant did under the circumstances. Presumably a jury of 12 persons, drawn from and representing a cross section of the community, is competent to judge that question, on the basis of its own knowledge and experience, and to determine negligence or freedom therefrom accordingly.... In a case involving professional service the ordinary layman is not equipped by common knowledge and experience to judge of the skill and competence of that service and determine whether it squares with the standard of such professional practice in the community. For that, the aid of expert testimony from those learned in the profession involved is required. *Id.* at 139–140, 108 N.W.2d 845. *See also Zoterell v. Repp,* 187 Mich. 319, 153 N.W. 692, 696 (1915) ("As to those matters of special knowledge strictly involving professional skill and attention, unskillfulness, negligence, or failure to do that which ought to be done must be shown by the testimony of those learned in such matters.")

in the existing system, which they did not). Aston also argues that the re-release problem was caused by K & D employees not following proper procedures.

K & D reasons that Aston breached this warranty because the problems did not exist prior to the conversion and that the modifications made to the Navision system caused the credit card and re-release problems. Russell testified that she never told Lin that every customer had a credit card number on file. K & D also contends that the "re-release problem required a programming fix, and that training was only a 'short-term salvo.'" (Doc. 33 at 16 (quoting Doc. 21 at 38.))

In light of the conflicting testimony, the record contains sufficient evidence from which a reasonable juror could find for either party on the issue of breach of Warranty B. Both motions for summary judgment therefore shall be denied.

■ Aston makes one final argument on the issue of breach of Warranty B: that warranties B and D are complimentary, and Warranty D would serve no purpose if Warranty B is interpreted to include K & D's argument that Aston breached Warranty B by delivering a system that contained modifications, but that the modified system was inconsistent with the delivered capabilities of the Navision Products due to the credit card and re-release problems.

I disagree. Interpreting Warranty B to require Aston to make the modifications to the Navision system in a manner that is consistent with the delivered capabilities of Navision Products, does not eliminate the purpose of Warranty D. Aston even admits as much: "10 B requires that Aston make the modifications [to the Navision system] specified by K & D and after delivery of those modifications, 10 D requires that for a period of 12 months following acceptance Aston will fix any programming errors in those modifications ...." (Doc. 39 at 9.)

Thus, in Warranty B, Aston promised to make the modifications specified by K & D in a manner consistent with the delivered capabilities of Navision Products, and in Warranty D, Aston promised that it would fix any programming errors for a period of twelve months. The fact that Aston later promised to fix any programming errors does not immunize defendants from liability from damages which occurred in the meantime (i.e., between delivery and repair) by not delivering a properly functioning system. Therefore, whether Aston breached Warranty B by delivering a malfunctioning system is properly at issue.

### 3. Warranty D

■ Aston warrants, in its final warranty, that it "will fix any programming errors where the customized programs do not operate in a manner that is consistent with the reasonably expected results, for a period of 12 months after acceptance of the system." (Doc. 22, Ex. 1 at 4.)

I find that Aston has satisfied this warranty. The parties agree that shortly after K & D notified Aston about the problems with the system, Aston promptly fixed the errors. If a jury were to find that such problems were "programming errors" within the meaning of the warranty, Aston met its obligations by promptly responding and correcting the errors.

Therefore, partial summary judgment shall be granted in defendant's favor as to any breach of Warranty D.

### 4. Damages

Aston also seeks summary judgment on the issue of damages. Aston contends that K & D failed to mitigate its losses, and therefore should be barred from recovering any losses which could have been prevented. Aston further argues that K & D's recovery should be limited to those damages it can prove with reasonable certainty, and thus K & D should be barred

from recovering damages for labor costs, lost good will, damaged reputation, and additional operating capital expenditure.

■ Under Michigan law, the injured party has the duty to mitigate damages in breach of contract cases subject to the Uniform Commercial Code. *TCP Indus., Inc. v. Uniroyal, Inc.,* 661 F.2d 542, 550 (6th Cir.1981) (citing *Ambassador Steel v. Ewald Steel,* 33 Mich.App. 495, 190 N.W.2d 275, 280 (1971)). The failure to mitigate damages is an affirmative defense, *Fothergill v. McKay Press,* 374 Mich. 138, 132 N.W.2d 144, 145 (1965), the burden of which is on the defendant to show that the plaintiff has not used every reasonable effort within his power to minimize plaintiff's damages. *McCullagh v. Goodyear Tire & Rubber Co.,* 342 Mich. 244, 69 N.W.2d 731, 737 (1955).

■ Aston contends that K & D failed to mitigate its damages by not notifying Aston of the problems sooner and by failing to collect payments for the products incorrectly delivered to customers. K & D argues the problems were not immediately discoverable and that federal law prohibits them from seeking return of or payment for the unsolicited merchandise. Because the record contains sufficient evidence from which a reasonable juror could find for either party on the issue of mitigation, Aston's motion shall be denied.

■ Defendant's motion shall also be denied on the issue of proving damages with reasonable certainty. Under Michigan law, "a party asserting a breach of contract claim bears the burden of proving its damages with reasonable certainty." *Walter Toebe & Co. v. Dep't of State Highways,* 144 Mich.App. 21, 373 N.W.2d 233, 241 (1985). Any doubts, however, as to the certainty of damages must be resolved against the wrongdoer. *Lorenz Supply Co. v. Am. Standard, Inc.,* 100 Mich.App. 600, 300 N.W.2d 335, 340 (1980).

I believe sufficient evidence exists in this case from which a reasonable juror could find that plaintiff has met its burden. Thus the issue of damages shall be left for a jury.

### Conclusion

In light of the foregoing, it is

ORDERED THAT:

1) Defendant Aston's motion for summary judgment be and the same hereby is granted in part as to liability for breach of Warranty D;

2) Defendant Aston's motion for summary judgment be and the same hereby is denied in part as to liability for breach of Warranty A and Warranty B and on the issue of damages; and

3) Plaintiff K & D's cross motion for summary judgment be and the same hereby is denied.

So ordered.