Lindy Homes, Inc., a corporation, filed an action in the Houston County Circuit Court against Evans Supply Company, Inc., a corporation, alleging that a quantity of nails which Lindy Homes had purchased were not of merchantable quality and were not reasonably fit for the particular purpose for which the nails had been purchased and used. Evans Supply answered by denying the allegations and asserting that Lindy Homes had improperly used the nails. Evans Supply, at the time it filed its answer, also filed a third-party complaint against Teague Hardware Company, a corporation. In its complaint, Evans Supply alleged that if it were found liable then Teague Hardware should be liable to Evans Supply on the ground that the former acted as its supplier. Teague Hardware filed a general denial to the complaint of Evans Supply and filed a fourth-party complaint against Borneo Sumatra Trading Company, Inc., the original supplier of the allegedly defective nails. Borneo Sumatra then filed a motion to dismiss. This motion was subsequently denied.
The matter was tried before the circuit court sitting without a jury. After the trial, the court entered judgment for "Defendant Evans Supply Company, Inc., . . ." and against the plaintiff, Lindy Homes, Inc. Lindy Homes appeals.
On appeal plaintiff argues that the case was tried below on two legal theories: (1) that the nails purchased by Lindy Homes from Evans Supply were not merchantable and therefore the latter breached its implied warranty of merchantability and (2) that the nails were not reasonably fit for the particular purpose for which the nails were purchased. Plaintiff concedes that the evidence clearly does not support the second issue; thus the plaintiff does not contend that the trial court's judgment was erroneous with regard to this aspect of the case. Consequently, the only question to be decided by this court is whether the trial court erred in not finding that the nails purchased from defendant-Evans Supply by plaintiff violated the implied warranty of merchantability.
The law of implied warranty of merchantability is set out in the Uniform Commercial Code, Title 7, section 2-314 (1) and section 2-314 (2), Code of Alabama 1975, and it is as follows:
 "(1) Unless excluded or modified (section 7-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
 "(2) Goods to be merchantable must be at least such as:
 "(a) Pass without objection in the trade under the contract description; and
 "(b) In the case of fungible goods, are of fair average quality within the description; and *Page 998 
 "(c) Are fit for the ordinary purposes for which such goods are used; and
 "(d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
 "(e) Are adequately contained, packaged, and labeled as the agreement may require; and
 "(f) Conform to the promises or affirmations of fact made on the container or label if any."
As provided in the above cited UCC sections, every contract for the sale of goods by a seller who is a merchant of the kind of goods sold impliedly contains a warranty of merchantability unless excluded or modified. In the case at bar there was no dispute that Evans Supply was a merchant of the type of nails purchased and used by Lindy Homes. Furthermore, there was no evidence that the seller had placed any specific restrictions on the use of the nails in question or otherwise excluded its implied warranty of merchantability. Therefore, we come to the question of whether there has been a breach of the implied warranty in the present case.
As stated above, the proceedings were conducted before the court sitting without a jury, and under the ore tenus rule the trial court's judgment must be affirmed unless it can be shown that said judgment is plainly and palpably erroneous. See 2A Alabama Digest, Appeal Error, Key No. 1011.1 (7).
The evidence shows that the plaintiff manufactures house components at its plant in Dothan, Alabama. Upon completion of the components they are transported to the jobsite for erection. In the instant case plaintiff had been engaged to make components for a warehouse which was to be erected in Gainesville, Florida. The exterior wall panels were to consist of cedar plywood paneling constructed in accordance with a design known as reverse board and batten.
In the construction of these wall panels, nails described as sixpenny galvanized casing nails were used. The evidence shows that during the period these panels were being constructed, plaintiff purchased several hundred pounds of sixpenny galvanized casing nails from Evans Supply.
In his deposition, the Gainesville, Florida city building inspector stated that nails used in the exterior panels of the warehouse were number six common bright nails. He further stated that the southern building code which had been adopted by the City of Gainesville required that electroplated or dipped galvanized nails be used on the exterior of buildings. He testified that the nails used in the exterior wall panels had not been galvanized and consequently had rusted.
Mr. Davis, the owner of Lindy Homes, testified that it was his understanding that galvanized nails could be used for any purpose in the building industry. Nonetheless, when he replaced the rusty nails which were the subject of this lawsuit, he replaced them with aluminum nails.
Conversely, the superintendent of Lindy Homes said that he used different kinds of nails for different kinds of siding. Moreover, he admitted that the cedar siding could have had a chemical effect on the nails used. He further testified that he was the one who ordered the nails from Evans Supply on behalf of Lindy Homes. And he continued by stating that when he ordered the nails in question he did not inform Evans Supply about the kind of siding in which the nails were to be used. In addition, the superintendent stated that Lindy Homes had used "hot-dipped" nails on cedar siding before but had subsequently switched to the use of aluminum nails in cedar siding.
Another witness for plaintiff, a former employee of Evans Supply, and the person who filled the nail orders for Lindy Homes, testified that no one at Lindy Homes asked what type nails were to be used in cedar siding. However, he said that when asked such a question his advice to the inquiring party is not to use "electrogalvanized" nails (the type nails used by plaintiff) in cedar siding; instead, he suggests that the party *Page 999 
use "double-dipped" galvanized nails. He also stated that the boxes containing nails do not contain instructions for their use. He added that the proper type of nail to be used on a particular job is commonly known in the construction trade.
Yet another witness for plaintiff said that the nails which had rusted were electrogalvanized nails, whereas the type nails that should have been used by Lindy Homes for cedar exterior siding were "maze nails." He then noted that "maze nails" are double hot-dipped galvanized nails.
A witness for defendant, Teague Hardware, testified that when asked by a potential purchaser, he recommends that hot-dipped galvanized nails be used in cedar siding. He also testified that the only rustproof nail he knew of was an aluminum or stainless steel nail.
Defendant, Borneo Sumatra, presented a witness who testified that neither the printing on the nail carton nor the literature inside the carton contained instructions for the use of nails. He said that the particular kind of nail to be used on a specific job is common knowledge in the construction industry. He also stated that it is common knowledge in the trade that galvanized casing nails should not be used in exterior siding because a maze nail or "hot-dipped" galvanized nail is proper in such a condition.
It is obvious to us that the evidence in this case is in dispute as to the particular use for which a galvanized nail is suited in terms of the building industry. Lindy Homes' owner, Mr. Davis, testified that galvanized nails are not supposed to rust and are therefore suitable for any building industry use. To the contrary, several witnesses with a long history of experience in the building industry stated that hot-dipped galvanized nails should be used in cedar siding instead of electroplated galvanized nails. Furthermore, the Gainesville, Florida building inspector emphatically stated that ungalvanized nails were used in the exterior cedar siding.
The question of when the warranty of merchantability is imposed is premised in large part on the use of an item as recognized in the trade. See Ambassador Steel Co. v. EwaldSteel Co., 33 Mich. App. 495, 190 N.W.2d 275 (1971); HobsonConstruction Co. v. Hajoca Corporation, 28 N.C. App. 684,222 S.E.2d 709 (1976). The evidence in this case tended to indicate that galvanized nails were not the correct nails for use in cedar siding and, thus, the use of galvanized nails in this manner was not the ordinary purpose for which such nails are used in the building trade. See Hobson Construction Co. v.Hajoca Corporation, supra. Accordingly, based on the evidence in the record before us, it can reasonably be said that the plaintiff failed to prove that the nails used by it in the cedar exterior siding which it placed on the warehouse in question were not "fit for the ordinary purposes for which such goods are used." Consequently, we are not prepared to hold that the trial court's judgment finding for defendant, Evans Supply, was plainly and palpably erroneous.
The judgment of the trial court is therefore affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.