United States Court of Appeals,

Fifth Circuit.

No. 92-7500.

RIGHT WEIGH SCALE COMPANY, INC., Plaintiff-Appellee,

v.

EATON CORPORATION, Defendant-Appellant.

Aug. 19, 1993.

Appeal from the United States District Court for the Southern District of Mississippi.

Before SMITH, DUHÉ, and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

I.

Eaton Corporation's ("Eaton") wholly-owned subsidiary, Consolidated Controls, manufactures digital weight indicators that convert analog electric signals from load cells into a numerical readout on a digital display. Numerous businesses employ digital weight indicators in applications requiring precise weight measurement.

Right Weigh Scale Company, Inc. ("Right Weigh"), sold and installed various types of scales and associated equipment, including scales for weighing trucks. Right Weigh agreed to become a distributor for Eaton digital weight indicators. Pursuant to that agreement, Right Weigh was required, each year, to purchase a minimum number of indicators for resale to its customers. Right Weigh served as an Eaton distributor for a number of years and typically purchased indicators for inventory to ensure ready access when a customer application required a specific part.

In 1987, Eaton introduced a new indicator, the UMC 600. Distributors could purchase two varieties of this indicator, shielded or unshielded, by specifying the proper alphanumeric code when ordering from a catalog or other ordering materials distributed by Eaton. Engineers typically employ shielded indicators in applications where the indicator is likely to encounter radio frequency interference (RFI). Where little or no RFI is present, an application may utilize an unshielded indicator.

Radio waves emitted from numerous electronic devices cause RFI, which can interfere with the accuracy of the digital readout supplied by the indicator. Two-way and CB radios generate significant RFI, and applications using an indicator near them require a shielded indicator.

Mississippi has adopted regulations, concerning the RFI susceptibility of digital weight indicators, contained in Handbook 44, published by the National Bureau of Standards. Eaton advertised that the UMC-600 complied with these regulations. Any indicator used in commercial weighing equipment must comply with the Handbook 44 regulations, even if the environment contains little or no RFI. As we interpret the regulations, a commercial application is one in which an article's weight must be determined for marketing a product or for computing charges for services rendered on the basis of weight. Unshielded indicators may be used for non-commercial applications, which account for 70-807 of Eaton's sales.

Handbook 44 regulations do not require an indicator to be shielded to be legal for trade; an unshielded indicator meets the requirements if it blanks the indication, provides an error message, or fails to transmit a reading as a correct measurement value in the presence of RFI. Eaton admits that the unshielded UMC-600 does not meet these requirements; in other words, unshielded UMC-600 indicators are not legal for trade.

Beginning in May 1987, pursuant to Right Weigh's purchase orders, Eaton shipped Right Weigh a number of unshielded UMC-600 indicators. Eaton did not know how Right Weigh intended to use the indicators. Right Weigh utilized a number of the indicators in applications where large amounts of RFI were present. Apparently, all of these applications required the indicators to be legal for trade.

Right Weigh also failed to test the scales at the time of installation to determine whether they operated properly in the presence of RFI, although handbook 44 requires such testing for all installations where radios are likely to be used. About three-fourths of Right Weigh's business involves truck scales, which normally must operate in high RFI environments.

Eaton's warranty policy limited the customer's remedy to repair and/or replacement of the defective product and specifically excluded time and mileage. A separate clause states that Eaton is

not liable for any special or consequential damages of any kind.

In early 1989, Right Weigh notified Eaton that it was experiencing problems with RFI in some of the installations where Right Weigh used the UMC-600. After much communication between the two parties, Eaton decided to provide Right Weigh with 42 replacement units free of charge. As a goodwill gesture, Eaton also provided Right Weigh with a $6,000 credit to offset additional expenses. Right Weigh kept the unshielded UMC-600 indicators that remained functional for applications not requiring the scale to be legal for trade. In spite of Eaton's gestures, Right Weigh demanded an additional $62,700 in expenses and lost profits related to the replacement of the unshielded indicators. When Eaton refused, Right Weigh filed this lawsuit in the Circuit Court of Rankin County, Mississippi, in April 1990.

## II.

Eaton removed the case to federal co urt on the basis of diversity jurisdiction and filed a motion for summary judgment based upon its warranty policy. The district court denied this motion as well as Right Weigh's cross-motion for summary judgment. A jury awarded Right Weigh $62,700 in damages for breach of an implied warranty of merchantability, while rejecting claims of express warranty and warranty of fitness for a particular purpose.

## III.

Eaton first alleges that no substantial evidence supports the jury's finding that Eaton breached the implied warranty of merchantability. We review a jury verdict to determine whether it is supported by substantial evidence, meaning "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc). We will reverse a verdict only if no reasonable jury could have arrived at that verdict. *See id.; Sumitomo Bank v. Product Promotions,* 717 F.2d 215, 218 (5th Cir.1983).

For goods to be merchantable, they must, among other things, "pass without objection in the trade under the contract description" and be "fit for the ordinary purposes for which such goods are used." MISS.CODE ANN. § 75-2-314 (1981). Applying these standards, we conclude that the verdict

was not supported by substantial evidence.

Eaton sold two types of indicators—shielded and unshielded. Right Weigh had the choice to order either type of indicator and chose the unshielded variety. The contract between the parties, therefore, involved unshielded indicators. Eaton's advertising brochure gives the parties the choice of ordering a UMC-600 with or without RFI shielding. Right Weigh rejected the shielded option. No evidence in the record establishes that these units were defective when used for the ordinary purposes for which *unshielded* indicators are used.[1] Right Weigh simply chose the wrong part for the job and now attempts to blame Eaton for its mistake.

Right Weigh argues that the Mississippi regulations require all indicators to work properly in the presence of RFI. Based upon the evidence in the record, no reasonable jury could reach such a conclusion. Right Weigh's reliance upon these regulations only clouds the issue. The Handbook 44 requirements apply only to *commercial* applications. As we noted above, commercial applications involve those in which weight is directly relevant to the sale of goods or services.

Eaton's evidence at trial established that the vast majority of applications do not require legal-for-trade, RFI-resistant indicators; most applications, in other words, are not "commercial." Indeed, the vast majority of Eaton's sales involve unshielded indicators for use in applications not requiring the indicator to be legal for trade. Given the eight percent cost differential between the two types of indicators, customers not requiring a legal-for-trade indicator have good economic incentive to order the less expensive unshielded model.

In light of this evidence, no reasonable jury could conclude that *all* digital weight indicators must be shielded from RFI to be fit for ordinary use in Mississippi.[2] Instead, only indicators employed

---

[1]The fact that an unshielded indicator still could meet the Handbook 44 regulations if it blanked, became unstable, or failed to transmit in the presence of RFI is irrelevant. The question is not whether Eaton could have made an unshielded indicator that met these requirements but whether these regulations require such operation to make the indicators merchantable.

[2]Our conclusion might be different if Mississippi had required all scales used in the state to meet the Handbook 44 requirements, even if no other state had such a requirement. Such a case would present the question whether a product that admittedly is merchantable in the other 49 states becomes unmerchantable in the remaining states because of stringent regulations. For example, an automobile may satisfy emissions requirements in 49 states, yet fail to satisfy California's stricter regulations. We leave this issue for another day.

in legal-for-trade applications had to be shielded.

If we accepted Right Weigh's argument, serious consequences could result. Has a power supply maker breached the implied warranty of merchantability when a computer manufacturer incorporates a power supply into a computer where the power supply was designed for American voltages and the computer is sold in Europe where voltages are higher? Has an aluminum manufacturer breached the implied warranty of merchantability when a construction company builds a bridge o ut of aluminum when it should have used steel? We think not. We conclude that prior cases discussing the implied warranty of merchantability stand for the proposition that the seller of parts or raw materials shall not be held liable as a matter of law where the buyer has blundered.

In *Lindy Homes, Inc. v. Evans Supply Co.,* 357 So.2d 996 (Ala.Civ.App.1978), the court held that the buyer could not recover where it had chosen the wrong type of nails for use in a construction project. The buyer purchased nails to construct wall panels made of cedar. It was well known in the construction industry that ordinary galvanized nails were unacceptable for use with such paneling. When the buyer used these nails anyway and later sued for breach of the implied warranty of merchantability, the court held that use of the nails for this purpose was not an ordinary purpose for which those nails were used in the building trade. *Id.* at 999. Similarly, here, Right Weigh chose to use an unshielded indicator in applications requiring shielding. Such a use was not an ordinary use.

In *Bethlehem Steel Corp. v. Chicago E. Corp.,* 863 F.2d 508 (7th Cir.1988), the court upheld a directed verdict that the seller had not breached the implied warranty of merchantability. Chicago Eastern Corporation had ordered steel for use in a project and specified both industry standards and express requirements the steel had to meet. Although the steel met these requirements, the buyer still claimed the steel was not merchantable because it turned out to be brittle. The court determined that no reasonable jury could have found that this brittle steel was not fit for the ordinary uses for which it would be employed, as the buyer had not presented such evidence. Here, Eaton has established that unshielded indicators are fit for ordinary uses not involving commercial applications.[3]

---

[3]For other cases employing similar reasoning, see *Global Truck & Equip. Co. v. Palmer Mach. Works,* 628 F.Supp. 641 (N.D.Miss.1986); *Gilbert & Bennett Mfg. Co. v. Westinghouse Elec. Corp.,* 445 F.Supp. 537 (D.Mass.1977); *Guaranteed Constr. Co. v. Gold Bond Prods.,* 395

We conclude that no reasonable jury could have found that Eaton breached the implied warranty of merchantability. Eaton supplied what Right Weigh ordered: unshielded digital weight indicators that were merchantable for ordinary uses of *unshielded* indicators. The fact that Right Weigh chose to employ these indicators for an improper purpose does not make them unmerchantable.[4]

The judgment is REVERSED, and judgment in favor of Eaton is hereby RENDERED.


DUHÉ, Circuit Judge, dissenting:

There are many significant facts in this case which are disputed. The major one is whether or not, as the majority holds, Right Weigh simply bought the wrong equipment for the job it wished to do; a simple "misuse of the product" situation. This determination in turn rests upon other disputed facts. Did Right Weigh make a conscious choice to buy unshielded rather than shielded units? Did Right Weigh test the installations as required? If it had, would the problems have manifested themselves? Did the units comply with all appropriate state requirements? Did Right Weigh actually rely upon the several advertisements of the product that it claimed to have relied upon, given their respective dates? Additionally, it is clear that, contrary to the majority holding, the contract between these parties involved both shielded and unshielded units.

The jury decided this case after hearing the disputed evidence. That was it's function. As I read the record, it can support the jury's verdict. I, therefore, would not overturn it. For that reason, and with the greatest respect for my brothers of the majority, I dissent.

---

N.W.2d 332 (Mich.App.1986); *Festa v. Closure Co.,* 14 Mass.App. 921, 436 N.E.2d 977 (1982).

[4]Because of our holding, we need not address Eaton's claims regarding damages and limitation of remedies.