On Application For Rehearing

YATES, Judge.
This court’s opinion of February 20, 1998, is withdrawn, and the following is substituted therefor.
On March 15, 1996, James Ruben Martin (“Martin”) petitioned for a sale and division of .43 acres of commercial property that he jointly owned with his mother, Marjorie I. Martin n/k/a Marjorie Martin Hannah (“Hannah”), and his brother, Michael Edward Martin. The property was leased to Carl West, who was also named as a defendant. Martin alleged conversion, stating that Hannah had converted to her own use monies generated from West’s lease. Martin asked the court to order a sale of the property; an accounting and division of the monies derived from the leased property from June 1979 to March 1996; and an award of an attorney fee. He alleged that he, his mother, and his brother, as cotenants, each had a one-third interest in the property.
Following ore tenus proceedings on June 10, 1997, the court made the following findings:
“In 1976 attorneys included a wife’s name on deeds as a matter of course when a husband conveyed property. This was true even if the wife’s name was not on the original deed and was intended to safeguard against a failure to convey a dower interest.
“In this case, Marjorie I. Martin received her interest, not as William Howard Martin’s wife, but on her own. Ms. Martin’s (Hannah’s) testimony establishes that the only interest being conveyed in 1976 was her husband’s. *199 Therefore, this court concludes that the 1976 deed only conveyed William Howard Martin’s ½ interest.
“Since this is the case, the interests pursuant to the 1976 deed are as follows: Marjorie I. Martin (Hannah) — 2/3, James Ruben Martin — 1/6, and Michael Edward Martin — 1/6.”
The court, “per the appraisal testimony of Ed Tillman,” established the value of the property to be $30,000 and ordered the sale, with the cotenants having the first opportunity to buy out the interest of the other cotenants. As to Martin’s request for an accounting, the court found:
“In May, 1995, the plaintiff demanded that Ms. Martin (Hannah) give him ⅓ of the rental income. She gave him $100 per month in September, October, November, and December, 1995.
“The Plaintiff, James Ruben Martin, has never paid any portion of the taxes on the property nor has he paid for any upkeep or maintenance. He lived in his mother’s home and was supported by her until 1993 when he was 25 and ½ years old and got married.
“This court finds that the Plaintiff received at least [what he was entitled to], if not more, of the rent proceeds over the years that he was supported by his mother from her income and income received from renting the property. The Plaintiff is not entitled to any more money from his mother, Marjorie I. Martin (Hannah).”
On July 7, 1997, Martin filed a post-judgment motion attacking the court’s allocation of interests, the appraised value of the property, the denial of an attorney fee, and the court’s failure to award him money allegedly owed to him under West’s lease of the property. The court denied Martin’s motion and this appeal followed.[1] This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
Under the ore tenus rule, a presumption of correctness exists as to the trial court’s findings of fact. The trial court’s judgment will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or clearly against the weight of the evidence. Griggs v. Driftwood Landing, Inc., 620 So.2d 582, 586 (Ala.1993). Further, the trial court’s judgment must be affirmed unless it can be shown that it is plainly and palpably erroneous. Lindy Homes, Inc. v. Evans Supply Co., 357 So.2d 996, 998 (Ala.Civ.App.1978).
The record shows the history of the subject property to be as follows: Carl J. Cook and Jean Cook conveyed the property to William Howard Martin (hereinafter referred to as “the father”) and Marjorie I. Martin (Hannah) on April 4, 1973. Both are referred to as grantees on the 1973 deed. Before their divorce in 1976, the father and Hannah executed a deed conveying the subject property and another piece of property to Hannah and their two sons, James Ruben and Michael Edward.
The father testified that he could not read and did not know that his wife was lk owner of the property. He stated that he did not know that his wife’s name was on the 1973 deed and that he had thought that he was the sole owner of the property. He further testified that the 1976 deed was signed when he and Hannah were contemplating divorce. The father stated that he had wanted his sons to have the subject property, along with the farm land he owned, when they came of age. He also stated that he thought Hannah was going to take care of the property until the sons turned 21 and that the rental income would be put into a trust fund.
Hannah testified that when the property was conveyed in 1973, she owned a one- *200 half interest. She stated that she did not have any intention of deeding any of her interest in the property. Further, she stated that there had been no discussion about how the deed was to be prepared, but that the father had told her that he was going to give “his share” to the sons. She also testified that she had told Martin that he was part owner and that his name was on the deed.
Hannah testified that she had received approximately $400 per month in rent on West’s lease, which became effective in June 1980.[2] Hannah stated that she had been the only person who had maintained the property since the divorce. This included paying all expenses, taxes, and costs of renovations. She further testified that she had given Martin a total of $400 from September to December 1995 to help with the arrival of his new baby and to help him out, but that this amount in no way meant that she owed either of her sons any money from the property. It was not until May 1995 that Martin requested a portion of the rent.
Michael Edward Martin testified that beginning around the age of 12 he knew that he was a part owner of the property. He stated that his brother was aware of this fact as well. Michael testified that he and his brother were not responsible for any taxes or other costs on the property and that he did not know anything about a trust fund. He further testified that he had never seen the deed, but always knew that his name was on it. He said he thought that he would receive the property after his parents died.
Martin testified that he had lived with his mother until he was 25 years old and married. He said he knew that Hannah owned the property and rented it out, but that he did not know that his name was on the deed. He stated that while growing up he had heard conflicting stories about the property, that his father had told him to “go check the property out,” and that his mother had told him that he and his brother would get the property when she died. Martin stated that he never saw the deed before 1995 and that it was at that time that he had requested ⅓ of the rental income from his mother.
Martin contends that the court incorrectly apportioned the interests of each co-tenant. We disagree.
The court found that Hannah owned a $ interest in the property before the 1976 conveyance. The 1976 deed, executed at a time when Alabama law provided for “dower” rights,[3] shows a conveyance from “William Howard Martin and his wife Marjorie I. Martin” to “Marjorie I. Martin, James Ruben Martin, and Michael Edward Martin.” The relevant portion of the deed reads as follows:
“That in consideration of One Hundred Dollars and other valuable consideration to the undersigned grantor or grantors in hand paid by the GRANTEES herein, the receipt whereof is acknowledged, we, William Howard Martin and his wife, Marjorie I. Martin (hereinafter referred to as grantors) do grant, bargain, sell and convey unto Marjorie I. Martin, James Ruben Martin and Michael Edward Martin (hereinafter referred to as GRANTEES) for and during their joint lives.... ”
The trial court made the following findings:
“James Ruben Martin contends that he, his brother and his mother each own a ⅓ interest in the property. A simplistic reading of the ‘grantee’ portion of the deed would result in such an interpretation. However, when one realizes that Marjorie I. Martin already owned a ½ *201 interest in the property prior to the 1976 conveyance and that dower rights were prevalent in Alabama at that time, a sufficient ambiguity exists to lead the Court to look further in determining the true interest of the parties.
“In 1976 attorneys included a wife’s name on deeds as a matter of course when a husband conveyed property. This was true even if the wife’s name was not on the original deed and was intended to safeguard against a failure to convey a dower interest.
“In this case, Marjorie I. Martin received her interest, not as William Howard Martin’s wife, but on her own. Ms. Martin’s (Hannah’s) testimony establishes that the only interest being conveyed in 1976 was her husband’s. Therefore, this court concludes that the 1976 deed only conveyed William Howard Martin’s $ interest.”
We agree with the trial court that the language in the grantor provision is ambiguous, thereby requiring the use of parol evidence to determine' the intent of the parties at the time the document was executed. Financial Investment Corp. v. Tukabatchee Area Council, Inc., 353 So.2d 1389 (Ala.1977). Further, we conclude that in order to equitably determine the interests of each party, we must consider Hannah’s intentions as to what she, as one of the grantors, purported to give to the grantees. Id. at 1391. We affirm this portion of the judgment. Lindy Homes, Inc., supra.
Martin next contends that because a benefit inured to the common estate as well as to the tenants in common, he is entitled to a reasonable attorney fee.
In a sale for division, the award of an attorney fee is within the discretion of the trial court. § 34-3-60, Ala.Code 1975. Further, when an attorney fee is allowed under § 34-3-60, Ala.Code 1975, “it is on the basis of, and solely for, the benefits inuring to the common estate and to the tenants in common and not involving controversy as to respective rights or interests of individual tenants in common.” Irons v. Le Sueur, 487 So.2d 1352, 1359 (Ala.1986). The statute precludes the award of an attorney fee in cases like this one, where the rights and interests of the cotenants are in dispute. Id.; Sanders v. Bailem, 684 So.2d 1344, 1346 (Ala.Civ.App.1996). Based on the controversy regarding the respective interests of the coten-ants, we affirm the trial court’s denial of an attorney fee award.
Martin next contends that the court's disregard of the findings of the court-appointed appraiser lowered his monetary interest in the property and was an abuse of discretion. However, Martin cites no relevant authority that supports his position. The argument of a brief “ ‘shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities.’ ” D.J. Sherwood Transportation, Inc. v. Road Shows, Inc., 656 So.2d 884, 886 (Ala.Civ.App.1995) (quoting Rule 28(a)(5), Ala. R.App. P.).
Finally, Martin contends that he, as a cotenant, is entitled to an accounting because, he says, when Hannah received moneys from West for the use of the common property, she became a trustee for the amount collected for the benefit of the other cotenants.
A cotenant who has received money from third persons becomes a trustee of the amount collected for the benefit of his cotenants. Faust v. Faust, 251 Ala. 35, 36 So.2d 232 (1948). Further, for money received, the cotenant must account. Id.
The court held that by virtue of the fact that Martin had resided with his mother until age 25, he had received at least his share, if not more than his share, of the rent proceeds over the years that Hannah had supported him and that, therefore, Martin was not entitled to any more money from his mother. We agree with the court that after the costs have been calculated for renovations, mainte *202 nance, and other related expenses associated with the subject property, coupled with the fact that Hannah did not receive any monetary support from Martin’s father after the 1976 divorce, and the fact that Martin had lived with her until he was 25 years old, Martin may not be “entitled to any more money from his mother.” However, these facts alone do not relieve her of her obligation to account to her cotenants, albeit her sons, for rent collected bn the property from a third party. Faust, supra.
Accordingly, that portion of the judgment is reversed and the case is remanded for the court to order Hannah to produce an accounting of income and expenditures regarding the property.
OPINION OF FEBRUARY 20, 1998, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED AND 39(k) MOTION DENIED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and MONROE and THOMPSON, JJ., concur.
CRAWLEY, J., dissents.

. Default judgments were entered on June 12, 1996, against Michael Edward Martin and West; they are not parties to this appeal.

. For the first 15 months, West had paid $600 per month to cover the cost of equipment.

. "Dower” is a life estate of the widow in a certain portion of her husband’s real estate, i.e., all lands of which the husband was seized in fee during their marriage. Worley v. Worley, 388 So.2d 502, 508 (Ala.1980); see also Lappan v. Lovette, 577 So.2d 893 (Ala.1991).